EBENEZER E. CHAPMAN and others, in equity,

*vs.*

JEDEDIAH T. KIMBALL and others, TRUSTEES.

Oxford.    Opinion April 10, 1891.

*Death,—proof of.  Evidence.  Presumptions.  Trusts.*

A young man, in 1866, then about twenty-five years old, left his father's home in this state to go to the Western states in search of business or work. He had made such a trip before, returning after a short time. Going this time with acquaintances, he accompanied them to Missouri, settling in the town of Liberty, in that state. In 1869, he had a long and severe sickness at that place, during which he wrote home for funds, which were sent him. Up to that time he had habitually written to his family friends, and there had never been any alienation of affection on either side. In the last letter received from him by the family he wrote he was going to visit an uncle in Indiana, but he did not go there. Getting up poorly from his sickness·

having naturally a weak constitution and suffering from a lung complaint, he left Liberty for Chico, California, hoping the climate there would benefit him. He was a single man, not very successful in the affairs of life, not rising above working at labor in different employments. Chico and Liberty, have been thoroughly searched, the missing man inquired for through the newspapers at those places, and no trace of him has been discovered, and no person found who has seen or heard from or of him since 1870, over twenty years ago. *Held*: That the reasonable presumption is that he is dead, leaving no children to succeed to his inheritance.

This being a complaint in equity by the relatives of the person alleged to be deceased against parties who hold in trust under the will of a grandfather of such person the fund which the complainants seek to have distributed, it is within the power of the court, for the greater protection of the trustees, to order the fund to be transferred from their keeping to the keeping of inheritors, imposing such terms of liability upon the latter as substituted trustees as may be deemed reasonable.

On REPORT.

Bill in equity, heard on bill, answer and proof.

This was a bill in equity brought against the defendants, trustees under the will of Ebenezer Eames, by the plaintiffs, his grandchildren and their survivors, claiming that a certain portion of the trust estate which otherwise would go to Leander T. Chapman, a grandchild, should be distributed to them, as his survivor under the will, by reason of his death without issue.

The principal issue was whether the said Leander was dead. The plaintiffs claimed that his unexplained absence from the state for twenty years, under the facts stated in their bill, was presumptive evidence sufficient to be conclusive of the fact.

The plaintiffs allege in their bill :

"Third. The plaintiffs further say that the said Leander T. Chapman, named in the will, went away from his home in Bethel, aforesaid, before the death of his said grandfather, Ebenezer Eames, and went out of this State, but that he continued to write to his relatives and friends in Bethel, from time to time and as often as once in two months but never returned to this State.

"In the month of August, A. D. 1869, he was in Liberty, Clay County, State of Missouri, and was at that time suffering from rheumatism and from disease of the lungs. That his life was despaired of for many weeks. Money was sent by his

friends in Bethel, for his aid and support, and during the latter part of the year 1869, he went to Chico, in the State of California, for the purpose of benefiting his health. The plaintiffs have been informed that the said Leander reached Chico, in due course of travel, but neither they nor any of the friends of the said Leander have ever heard from him since, although about twenty years have elapsed.

"Fourth. The plaintiffs further say that they have caused a diligent search to be made for said Leander, and have caused advertisements and notices to be published in newspapers in said Liberty and Chico, and that he cannot be found; by means and on account of all which the plaintiffs have been informed and believe and, therefore, allege that the said Leander is dead.

"Fifth. The plaintiffs further say that the defendants were duly appointed and accepted the trust created by said will and that the one half of the said residue and remainder of the said estate bequeathed in said will for the benefit of said grandchildren has been received by said defendants as said trustees, and they, acting in that capacity, have divided and distributed the same among said grandchildren according to the provisions of said will excepting the share that would go to the said Leander, were he now living. That said defendants hold said Leander's share of the legacy named in said will and refuse to distribute and pay the same to the plaintiffs. That said share amounts to the sum of nineteen hundred and twenty dollars and eight cents ($1920.08,) which sum the plaintiffs claim should be distributed to them according to the provisions of said will."

Defendants answer, admitting the other facts :

"Second. As to the statements in paragraphs three and four of the plaintiffs' bill, the defendants have no knowledge whether they are true or false and, in particular, the defendants do not know whether said Leander T. Chapman is dead, or not, nor whether he has lawful issue living.

"Third. The said defendants are ready and willing to pay said legacy given in said will to said Leander T. Chapman, to any person or persons to whom they lawfully or properly can pay it without risk to themselves.

"If this Honorable Court can make such decree as will fully protect the said defendants, in case it be true that either said Leander T. Chapman or any of his lawful issue be living, then the said defendants are ready and willing, when protected by such decree, to pay said legacy as they may be therein directed.

"If however, this Honorable Court cannot make such a decree as will fully protect the said defendants, in case said Leander T. Chapman or any lawful issue of his be living, then said bill should be dismissed."

The facts are found in the opinion.

*A. E. Herrick,* for plaintiffs.

Presumptions : *Stevens* v. *McNamara,* 36 Maine, 176 ; *White* v. *Mann,* 26 *Id.* 361; *Loring* v. *Steineman,* 1 Met. 204 ; 1 Greenl. Ev. (4th Ed.) § 41 ; 2 *Id.* § 278-f ; *Davie* v. *Briggs,* 97 U. S. 628 ; 3 Redf. Wills, 4 ; *Wentworth* v. *Wentworth,* 71 Maine, 74 ; *Prudential Assur. Co.* v. *Edmonds,* 2 App. Cas. 487 ; *Rowe* v. *Hasland,* 1 W. Bl. 404 ; *Doe* v. *Griffin,* 15 East, 293.

Jurisdiction : R. S., c. 77, § § 6, 7 ; *Loring* v. *Steineman,* 1 Met. 208 ; *Miller* v. *Beates,* 3 S. & R. 490 ; *Faulk* v. *Dashiell,* 101 Pa. St. 273 ; *Johnson* v. *Merithew,* 80 Maine, 111 ; *Wentworth* v. *Wentworth,* 71 *Id.* 72.

No refunding bond : *Stockbridge, Pet'rs,* 145 Mass. 517.

*A. H. Wellman,* of Boston bar, for defendants.

It is admitted that there is no direct evidence of Leander T. Chapman's death. To be presumed, plaintiffs must show : That he left his usual home or place of residence more than seven years since. *White* v. *Mann,* 26 Maine, 361, 370 ; *Loring* v. *Steinman,* 1 Met. 204, 211 ; *Stinchfield* v. *Emerson,* 52 Maine, 465 ; *McMahon* v. *McElroy,* 5 Ir. Rep. Eq. 1 ; *McRee* v. *Copelin,* 2 Cen. L. J. 813. That he left for temporary purposes of business or pleasure intending to return. *White* v. *Mann, supra* ; *Wentworth* v. *Wentworth,* 71 Maine, 72, 74 ; *Johnson* v. *Merithew,* 80 *Id.* 111, 115. That all persons who would naturally have heard from him, if he was living, have not heard from him, during a period of seven years. Cases, *supra* :

*Prudential Assur. Co.* v. *Edmonds,* 2 App. Cas. 487, 509; *In re, Miller's Estate,* 9 N. Y. S. 639; *Bowen* v. *Henderson,* 2 Sm. & G. 366.

The presumption of death is rebutted by evidence that the person, who is claimed to be dead, has been heard from within seven years; nor does it matter whether the intelligence is from persons in or out of the family. *Wentworth* v. *Wentworth, supra; Flynn* v. *Coffee,* 12 Allen, 133.

If anything has been heard, which would raise a reasonable doubt as to whether the person was dead or not, the presumption of death is overthrown. *Prudential Assur. Co.* v. *Edmonds, supra.*

The presumption of death from absence should not, in this country, be readily established, especially where the person supposed to be dead had acquired or intended to acquire a domicile in a distant state. *Smith* v. *Smith,* 49 Ala. 156; *McRee* v. *Copelin, supra.*

Plaintiffs must not only prove the death but also that he died without lawful issue. *Stinchfield* v. *Emerson, supra; Mullaly* v. *Walsh,* 6 Ir. Rep. C. L. 314, 319.

The rights of Leander T. Chapman and his lawful issue cannot be concluded by this bill or any decree made in this proceeding, they not being parties thereto. *Bailey* v. *Myrick,* 36 Maine, 50, 52; *Brown* v. *Johnson,* 53 Maine, 246; *Sears* v. *Hardy,* 120 Mass. 524, 529; *Williams* v. *Gibbs,* 17 How. (U. S.) 255. Story's Eq. Pl. § 106.

If the court should order the defendants to pay over to the plaintiffs the trust funds in their possession there seems to be no decision, either in Maine or Massachusetts, holding that such decree would protect the defendants if either Leander T. Chapman or any lawful issue of his should turn out to be living.

Where a savings bank paid the money to the administrator of a depositor who had been absent more than seven years without being heard from, the bank was nevertheless still liable to the depositor for the amount of his deposit. *Jochumsen* v. *Suffolk Savings Bank,* 3 Allen, 87.

A refunding bond should be required. Lewin on Trusts, * 348, or Text Book Series, (Blackstone Pub. Co. Ed.) Vol. 1, p. 487.

PETERS, C. J. Ebenezer Eames by his will dated in February, 1870, bequeathed to the defendants, in trust, a portion of his estate, to remain in their hands for a period not exceeding fifteen years after his decease, and then to be distributed among the survivors of certain grandchildren whom he names as entitled to shares. He died in November, 1870. Among those named was Leander T. Chapman, whom the other heirs allege to have been a long time deceased, whose share they seek by this bill in equity to have distributed to themselves. They have received the other shares of the estate.

Whether Leander shall be presumed to be deceased or not is the question presented. The trustees only ask protection against a liability to pay over the fund twice, making otherwise no objection to the bill.

The following facts are deducible from the testimony: Leander, who would now be, if alive, fifty years old, leaving his father's home, in Oxford County, in 1866, went to Kidder, Missouri, and thence to Liberty, in that state, where he remained some time engaged at work in different employments. In 1869 he was taken ill in the latter place, having a long and severe sickness. During his absence he habitually wrote home to different members of his father's family, there never having been any alienation of affection on either side. During his sickness, August 24, 1869, he wrote home for money and it was sent him. Since 1869 or 1870, none of the family or friends have ever heard from him. He wrote that he should go to Indiana, where an uncle lived, but he did not go there. No person has given any trace of him since that time, excepting that one Judge Jones, of Liberty, in response to a newspaper advertisement inquiring for his whereabouts, writes that he worked awhile for him, was in poor health at the time from lung complaint, and went to Chico, California, thinking it might be of benefit to his health, from which place he last heard from him in 1870. Up to the

time when any trace of him was had, he had not been married. His friends have thoroughly searched over Liberty and Chico, and do not obtain any clue to him since 1870, in any place.

Do these facts create a presumption that the man is dead? The general rule is familiar. If a person leaves his usual home for temporary purposes, and is not heard of or known to be living, for the term of seven years, by those persons who would naturally have heard from him during the time had he been alive, the presumption is that he is dead. The rule does not confine the intelligence to any particular class of persons; it may be persons in or out of the family. *Wentworth* v. *Wentworth*, 71 Maine, 72, and cases there cited.

In what respect, if any, do the facts of the present case present either a weaker or stronger case than that defined by the general rule? It may be said that he did not have an avowed intention of returning to Oxford County,— that his absence was not intended to be merely temporary. But he had no home or family or business away from home to induce a permanent absence. He was seeking labor, and was probably attracted to Liberty, because an Oxford man lived there, with whom he hired. He had been out West before, returning to his Oxford home. In poor health, the instinctive disposition would be to return at some time to his father's home. The person who took care of him wrote during his severe sickness, "He always says he wants to die in his father's house." He kept up family relations by frequent letters. It is significant that when his letters ceased in 1870, all persons ceased to have any intelligence of him. There was no cause, if alive, for his breaking off the habit of writing to his friends at home. He had reason possibly to suppose that this very inheritance would be awaiting him. If not at his father's house, where was his home? If in Liberty or Chico, his absence from those places for twenty years, without any trace of him elsewhere, is just as unaccountable. But the present facts are in several respects stronger than those of the general rule. The unexplained absence from all known friends for so long a period as twenty years, instead of seven, very greatly strengthens the presumption. Superadded is the important fact that he was a

man of ill-health and weak constitution. During his sickness he writes his father that his weight was ninety-six pounds. He had congestion of the lungs, according to the nurse's account, and Judge Jones, writes that his health was impaired by a bad lung affection. We think the bill must be sustained. It makes no difference that personal and not real estate is involved. *Stockbridge, Petitioner*, 145 Mass. 517.

The defendants take the point that it must be shown that the missing man is deceased, leaving no children to succeed to his inheritance. The burden is the other way. The defendants may show he left direct heirs. If the man cannot be found or his fate ascertained, it would be a difficult hunt to find children. *Loring* v. *Steineman*, 1 Met. 211.

The defendants would like the security of bonds of idemnity from the complainants. The proof is so conclusive it would not be reasonable to require sureties from them, or even that they shall stand bound for one another. But, as the court has the power to take the fund from the defendants and commit it to the complainants as provisional trustees, each complainant who is *sui juris* giving his own bond for the portion coming to his hands, a decree may be constructed, if the defendants desire that measure of protection, to that effect. The infant complainant, cannot give a bond, and the guardian ought not to be required to give one for her.

We think counsel fees for each side and complainants' costs should be allowed out of the fund, the amount of which may be determined by a single judge.      *Bill sustained.*

Walton, Virgin, Libbey, Haskell and Whitehouse, JJ., concurred.