CLARA SPAHR v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK. [1]

July 13, 1906.

Nos. 14,744—(152).

**Presumption of Death.**

A rebuttable presumption of death arises in the case of a person who has been absent from his home and from whom no tidings have been received for seven years.

**Same—Time of Death.**

The presumption, however, only implies that the person is dead; for there is no presumption that he died at any particular time during the seven years. The time of his death, whenever it is material, must be proven, like any other material issue, by the party alleging it. The date of death in such cases is a question of fact.

**Evidence.**

Where one, steady in his habits, successful in his profession or business, contented and respected, having a fixed residence and pleasant domestic relations, suddenly disappears, and no tidings of him are received, such circumstances, if satisfactory to the jury, may warrant them in finding his death at or about the time of his disappearance.

**Insufficient Evidence.**

Evidence considered, and *held*, that it is not sufficient to warrant a finding that the insured died within fifty seven days after his disappearance.

Action in the district court for McLeod county to recover $2,300 upon a life insurance policy. The case was tried before Morrison, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict and granting a new trial, defendant appealed. Reversed and judgment ordered for defendant.

*Ambrose Tighe,* for appellant.

*M. J. Daly* and *R. H. McClelland,* for respondent.

START, C. J.

On June 1, 1897, the plaintiff was the wife of Rev. Charles F. Spahr, hereinafter referred to as the insured. On that day the de-

[1] Reported in 108 N. W. 4.

fendant issued its life insurance policy for $2,300 on his life, and the plaintiff was the beneficiary named in it. This action was commenced July 7, 1905, on the policy to recover $2,300. The complaint alleged that the insured died on or about April 5, 1898. The answer denied that he died at the time alleged in the complaint, or at any other time. It is conceded that the policy lapsed on June 1, 1898, by reason of the nonpayment of the annual premium, unless the insured died on or before that date. The sole issue on the trial of the action was whether the insured died on or before June 1, 1898. The jury found that he did, and returned a verdict for the plaintiff for the amount of the policy. The defendant made an alternative motion for judgment in its favor or for a new trial. The trial court made its order denying the motion for judgment and granting the motion for a new trial. The defendant appealed from the order.

The question for our consideration is: Did the trial court err in refusing the defendant's request for a directed verdict in its favor? If the evidence was sufficient to sustain a finding by the jury that the insured died on or before June 1, 1898, the question must be answered in the negative; otherwise, in the affirmative.

There was no direct evidence that the insured died at any particular time, or, for that matter, that he was dead. The burden was on the plaintiff to establish the fact that the insured was dead and that he died on or before June 1, 1898. The evidence is practically conclusive that the insured on April 4, 1898, left his home, wife, and children, that he never returned, and that no tidings from him were ever received by his family. This action was commenced more than seven years after his disappearance. Proof of this fact was sufficient to sustain a finding that the insured was dead; for a rebuttable presumption of death arises in the case of a person who has been absent from his home and from whom no tidings have been received for seven years. This presumption, however, only implies that the person is dead; for there is no presumption that he died at any particular time during the seven years, and the time of his death, whenever it is material, must be proven, like any other material fact, by the party alleging it. It is not necessary to prove the date of the death by direct evidence. It may be inferred from proof of circumstances sufficient to raise a presumption that he died on or about the date claimed. The

date of death in such a case is a question of fact. State v. Plym, 43 Minn. 385, 45 N. W. 848; Waite v. Coaracy, 45 Minn. 159, 47 N. W. 537; Northwestern Mut. Life Ins. Co. v. Stevens, 71 Fed. 258, 18 C. C. A. 107; 13 Cyc. 297.

Where one, steady in his habits, successful in his profession or business, contented and respected, having a fixed residence and pleasant domestic relations, suddenly disappears, and no tidings of him are received, such circumstances, if satisfactory to the jury, may warrant them in finding his death at or about the time of his disappearance. Tisdale v. Connecticut, 26 Iowa, 170, 96 Am. Dec. 136; Hancock v. American, 62 Mo. 26; Northwestern Life Ins. Co. v. Stevens, 71 Fed. 258, 18 C. C. A. 107. The rule is based upon the reasonable probability that a man of such character and so circumstanced would, if alive, communicate with his family.

The plaintiff attempted to establish the fact that the insured was a man of such character and so circumstanced. The evidence tended to show that he was a clergyman of education and culture in the German Lutheran Church, in charge of a parish at Biscay, this state; that he was successful in his sacred calling and respected by his parishioners and friends; that he was thirty one years old; that his family consisted of his wife and two daughters, of whom he was fond; that his domestic relations ordinarily were pleasant; that his credit was good; that on Sunday, April 3, 1898, he held services in his church, announced that there would be communion services at the church the following Friday, and requested all to be present; and, further, that on the next day, Monday, the plaintiff drove him to the station, and he requested her to meet him there on the following Thursday, which she did, but he did not return then, or at any other time, and that he has not communicated with his family; that when he left the church was owing him $24, and he left $40 with his wife.

This, however, is only one side of the shield. The evidence is practically conclusive that the insured was in fact a drunkard, a user of morphine, and a libertine. The plaintiff testified that for at least a year before he went away he was a hard drinker, frequently drunk, kept a keg of whiskey in the house and when drunk he abused her; that on April 12, 1898, or five days after the day appointed for his return, she commenced an action for a divorce on the ground that he

was an habitual drunkard, and in her verified complaint she stated that for many years past he had treated her in a cruel and inhuman manner, and that she was informed and believed that he left the state accompanied by a woman. She proved her case, and the divorce was granted July 25, 1898. She testified on the trial that at the time she verified the complaint she believed that a woman went with him, but afterwards learned that the allegation was a mistake.

There is no evidence that the insured left with a woman, but the evidence does show that the woman the plaintiff believed that he went away with lived for a time under an assumed name at Red Wing; that there, from June to January before his departure, he, also under an assumed name, frequently visited her, claiming to be her brother, staying with her for a day or two at a time in a house occupied only by them. The evidence also tends to show that the insured, during his visits to Red Wing, there made the acquaintance of an unmarried woman twenty one years of age; that he paid her considerable attention and asked her secretly to marry him; that in the month of March, 1898, she went to Salt Lake City, Utah. This young woman, who, at the time she gave her testimony, was a wife and mother living at Duluth, testified in this case to the effect that the insured, whom she identified by his photograph, was the man who proposed marriage to her at Red Wing; that he came to Salt Lake City a short time after she arrived there and about April 1, 1898, that she remained there until November, 1898, that she there saw him nearly every day; that he was at the railroad station, where, in the month of November, 1898, she took the train to return to Red Wing; and that she has never seen him since. There is nothing in her testimony or in the circumstances of the case disclosed by the evidence to indicate that it was not credible, besides so much of her testimony as relates to the conduct of the insured at Red Wing was corroborated by other evidence.

It is not necessary to consider the question whether the jury would have been justified in rejecting her testimony as false, if it stood alone; for upon the whole record it is obvious that the evidence, as a matter of law, is insufficient to sustain a finding that the insured died on or prior to June 1, 1898, or within fifty seven days after he left his family.

We have referred only to the general features of the evidence but a consideration of the whole evidence so manifestly and conclusively indicates that there was no evidence to sustain a verdict for the plaintiff that we refrain from discussing it. It follows that the defendant was entitled to a directed verdict in its favor, and that the order appealed from must be reversed, and the case remanded to the district court, with direction to grant the defendant's motion for judgment notwithstanding the verdict.

Reversed and judgment ordered for defendant.