## HILDA EKLUND v. SUPREME COUNCIL OF THE ROYAL ARCANUM.[1]

April 21, 1922.

No. 22,713.

**Presumption of death after seven years' absence.**

1. The common law rules relating to the presumption of death arising from a person's unexplained absence from his place of residence for seven years prevail in this state. There is no presumption that death occurred at any particular time. The facts related in the opinion justified the jury in finding that death took place within four years after a man's immediate family last heard from him.

**Presumption when absentee has no fixed place of residence.**

2. In the eyes of the law, a married man's residence is at the place where his wife and children live. If he has no fixed place of abode

[1]Reported in 187 N. W. 826.

'when he disappears and diligent search for him is made at the places where he would be likely to be and from which the last tidings from him were received, the presumption of death may arise as in the case of a man's disappearance from an established place of residence.

### Benefit insurance — limitation of action by amendment of by-laws.

3.  An amendment to the by-laws of a fraternal beneficiary association materially reducing the time within which actions may be brought upon beneficiary certificates theretofore issued is unreasonable and will not be enforced as against the holders of such certificates.

### Proofs of death made within reasonable time.

4.  Proofs of death were made within a reasonable time, though delayed for nearly four years after death occurred. The delay was necessary to enable the beneficiary to obtain the benefit of the presumption of the death of the insured from his unexplained absence for seven years.

Action in the district court for Clay county to recover $2,000 on defendant's benefit certificate. The case was tried before Nye, J., and a jury which returned a verdict for $2,203.96. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Benjamin D. Smith* and *Christian G. Dosland,* for appellant.
*Edwin Adams* and *F. H. Peterson,* for respondent.

LEES, C.

Action to recover on a benefit certificate issued by the defendant to Peter August Eklund on November 16, 1901, in which plaintiff was named as beneficiary.

She and Eklund were married in June, 1901, and lived together until June, 1905, when he left her at Moorhead in this state, where they resided after their marriage. There were three children, two born before he left and one shortly thereafter. We infer from the evidence that Eklund had embezzled funds of his employer and feared a criminal prosecution.

After his departure and until July 3, 1911, Eklund wrote quite regularly to his wife and to his foster mother. His letters were uniformly affectionate, expressed contrition for his misconduct, and

told about his wanderings. After leaving Moorhead, he took the name of P. A. Anderson, his foster mother's name being Anderson. He went from Moorhead to Montreal and sailed for Great Britain, where he remained for a few months. Near the end of October, he gave himself up to the authorities at Scotland Yard and wrote to his attorney at Moorhead informing him of the fact and requesting him to secure bail for him when he was brought back to Minnesota for trial. He was notified that no criminal prosecution had been begun and, being set at liberty, returned to this country, landing at Boston late in December. A few days later he went to New York, where he remained about a month. When next heard from he was in Maryland, employed in a greenhouse or nursery as a common laborer. His next letters were written from different places in the west, where he appears to have gone after leaving Maryland. He was a man of some education, had been deputy county auditor of Clay county, and was an accountant for a land company at the time of his departure, but, owing to the fact that he could give no references, he was unable to get anything but rough work to do and was employed principally in railroad construction. He never sent his wife any money and in many of his letters attempted to excuse his delinquency. In October, 1910, he wrote from Timber, Oregon, to his foster mother that he had been in an accident in a tunnel, was almost buried, and was in Dr. Buckley's hospital for treatment. In November, 1910, he wrote to his wife from the same place, saying that he was walking on crutches, had become a good tunnel man, earned fair wages from April to December, and would certainly come to see her and the children some time in 1911. In January, 1911, he wrote her from Portland, saying that he still walked with a limp, had a lump on his back and water in his kneecap, but nevertheless was going to work the following day as foreman on a job in a railroad camp; that he believed he could earn enough to support his family in Portland and that they must be reunited in 1911. Three weeks later he wrote her from Timber, saying that he had a great deal of blasting to do; that he disliked to handle dynamite, and told her of the death of a fellow workman in a cave-in. He continued to complain of his knee, and closed by saying he was certainly going

to try to bring her and the children to Portland in the summer; that he wanted to stop roaming around and have a home; that he had no fear of being unable to make a living for her and the children. In February he wrote from the same place, saying that his knee had not improved, was twice its natural size, and that he was advised by a doctor to undergo an operation. His last communication to her was a postal card from Hillsboro, Oregon, dated May 24, 1911, containing only the words "Greetings from Hillsboro, Ore." His last communication to his foster mother was a postal card postmarked "Beaverton, Oregon, July 3, 1911," with nothing upon it but a picture of the village of Beaverton. Since July 3, 1911, no tidings from him have been received. Hillsboro, Timber and Beaverton are small towns in the neighborhood of Portland.

When he ceased to write, his wife began a diligent search for him, which she kept up for about three years. She wrote to the chiefs of police of Hillsboro, Beaverton and Portland, Oregon; Reno, Nevada; San Francisco, Sacramento and Los Angeles, California; Seattle and Spokane, Washington; and other places in the west where her husband had been. She advertised for information about him in The War Cry, the organ of the Salvation Army, and had a copy of one of his recent photographs published in that paper and also sent several copies of the picture with her letters of inquiry. She wrote letters of inquiry to the Portland board of health, to a Portland newspaper, to the contractors for whom he had worked, and to the hospital where he had been when he was injured. In prosecuting her unsuccessful search for him, she gave his name as P. A. Anderson. So far as she ascertained, he dropped out of existence after mailing the postcard to his foster mother on July 3, 1911.

Plaintiff continued to pay the assessments required to keep the benefit certificate in force until July 23, 1915, when, pursuant to one of defendant's by-laws, her husband was suspended from the order for his nonappearance at his local lodge at Moorhead for six months after notice requiring him to appear. In February, 1919, plaintiff requested defendant to furnish her with blanks upon which she might make proof of her husband's death. Defendant declined to do so and some correspondence followed. In May she had the

proofs prepared and forwarded, and in October she commenced this action.  The principal defenses urged are:  (1) That it was not shown that Eklund was dead when he was suspended; (2) that plaintiff's cause of action was barred by an amendment to the by-laws adopted in 1909, which added to an existing by-law providing that an action for death benefits must be brought within three years after the right of action accrued, the following:

"Or if the action arises upon the death, or alleged death, of a member, within three years from the date of such death,"

(3) that if Eklund died prior to July 23, 1915, proofs of death should have been furnished within a reasonable time, and that this was not done.

1.  The doctrine of the common law was that a man, absent from his place of residence and neither seen nor heard of for seven years, there being no explanation of his absence, was presumed to be dead. The presumption might be rebutted by counter proof.  There was no presumption that death occurred at any particular time, though it was held in some states, but not in Minnesota, that, in the absence of evidence to the contrary, the presumption was that death occurred at the end of the seven year period.  In substance, the foregoing rules prevail in this state.  1 Dunnell, Minn. Dig. § 3434.

In the case at bar, in response to special interrogatory, the jury found that Eklund died prior to July 23, 1915.  Whether or not there is evidence to support this finding is the important question in the case.  We are of the opinion that there is.  It seems to us, judging from the regularity with which he wrote to his wife and foster mother for the six years following his departure from Moorhead, that they would have heard from him after July 3, 1911, if he were not dead.  There was no reason for the abrupt termination of his correspondence at that time.  Apparently he entertained a genuine affection for his family.  There is nothing in the correspondence to indicate an estrangement from his wife or that his expressed desire for a reunion in 1911 was insincere.  If he had not died prior to 1915, it would seem that his wife's persistent and widespread inquiries would have elicited some information as to his whereabouts.  The jury's finding is not unreasonable if the usual

presumption obtains under the circumstances surrounding his disappearance.

It is urged that it does not, for the reason that Eklund had no fixed place of abode. We do not sustain this contention. A man may be away from home following an occupation which takes him from place to place. He writes regularly to his wife, with whom his relations are cordial. With no explanation, his letters cease to come. She makes diligent inquiry, but cannot find him. Under such circumstances, there is no good reason why the presumption should not obtain. Granting that death will not be presumed after the lapse of seven years, when nothing is shown but the fact of a man's disappearance, the presumption should arise if it is also shown, as it was here, that a thorough search for him was made. These views are supported in a measure by the following cases: Renard v. Bennett, 76 Kan. 848, 93 Pac. 261, 14 Ann. Cas. 240; Gorham v. Stettegast, 44 Tex. Civ. App. 254, 98 S. W. 665; Marquet v. Aetna Life Ins. Co. 128 Tenn. 213, 159 S. W. 733, L. R. A. 1915B, 749, Ann. Cas. 1915B, 677; Wright v. Jones, 23 N. D. 191, 135 N. W. 1120; Prudential Ins. Co. v. Gatz, 182 Ky. 218, 206 S. W. 299; Wentworth v. Wentworth, 71 Me. 72.

2. If the amendment to defendant's by-laws, adopted in 1909, is applicable, the contract between the parties has been substantially changed. Instead of having three years after making proof of death within which to bring an action, the beneficiary is limited to three years from the date of the death of the insured. In a case where death can only be established by the aid of the common law presumption, it would be within the power of the defendant to defeat a recovery by proceeding under the by-law to suspend the member who has disappeared. If the beneficiary sued within three years thereafter, her action would fail because she could not establish the death of the insured. If she waited longer, she would fail because of the by-law. Plaintiff was entitled to the benefit of the presumption and had the right to defer bringing her action until seven years had elapsed. The by-law was unreasonable as applied to certificates issued prior to its adoption. Behlmer v. Grand Lodge A. O. U. W. 109 Minn. 305, 123 N. W. 1071, 26 L. R. A. (N. S.) 305;

Boynton v. Modern Woodmen of America, 148 Minn. 150, 181 N. W. 327.

3. Plaintiff could not make proof of her husband's death prior to July 3, 1918, if she was to have the benefit of the presumption. The proofs were made within a year thereafter. This was within a reasonable time. As to this feature of the case, Behlmer v. Grand Lodge A. O. U. W., supra, is decisive.

Affirmed.