W. R. HICKS, Appellee, v. MODERN WOODMEN OF AMERICA, Appellant.

DEATH: Presumption—Evidence. Evidence that an insured 30 years of age and in fair health went to a distant part of the country and obtained employment, and corresponded solely with his mother, of whom he was especially fond, but made no response to a message informing him of her death, is, in and of itself, insufficient to create a presumption of death at any *particular time* short of seven years. (See Book of Anno., Vol. 1, Sec. 11901.)

Headnote 1: 17 C. J. pp. 1167, 1174, 1175.

Headnote 1: 26 L. R. A. (N. S.) 294; L. R. A. 1915B, 756; 8 R. C. L. 711.

*Appeal from Page District Court.*—EARL PETERS and W. C. RATCLIFF, Judges.

APRIL 5, 1927.

Action to recover on a benefit certificate issued by the Modern Woodmen of America to Walter Wells Hicks, payable to

Maria Lavenia Hicks, his mother, as beneficiary. The plaintiff, who is the assignee of the heirs of his deceased wife, is the father of the member. Verdict and judgment for the plaintiff, and the defendant appeals.—*Reversed.*

*Truman Plantz, George G. Perrin, Stipe, Davidson & Davidson,* and *Nelson C. Pratt,* for appellant.

*Ferguson, Barnes & Ferguson,* for appellee.

STEVENS, J.—The benefit certificate upon which recovery is sought was issued by the appellant society January 4, 1910. The member, an unmarried man 30 years of age, left his home in Shenandoah, Iowa, in 1915, and went to Pocatello, Idaho, where he was last heard from in November or December of the following year. His occupation was that of a candy maker, and he is described in the evidence as possessed of excellent habits and character. This action was commenced in December, 1923, the plaintiff in his original petition relying upon the presumption of death arising from seven years' unexplained absence of the member. The last assessment paid on the policy was on June 18, 1919. All assessments paid after 1916 were paid by appellee. The benefit certificate provided that lapse of time, or absence or disappearance of the member, without proof of actual death, should not entitle the beneficiary to recover on the certificate, which contained the following further provision:

"The disappearance or long continued absence of any member unheard of shall not be regarded as evidence of death or give any right to recover on any benefit certificate heretofore or hereafter issued by the society until the full term of the member's expectancy of life, according to the National Fraternal Congress Table of Mortality, has expired within the life of the benefit certificate in question, and this law shall be in full force and effect, any statute of any state or country or rule of common law of any state or country to the contrary notwithstanding."

During the progress of the trial, the plaintiff amended the petition by alleging that the member died prior to June 18, 1919, the date on which the last assessment was paid. The case was submitted to the jury upon this theory. Numerous alleged errors are assigned by appellant for reversal, most of which are

insufficient, under the rules of this court, to entitle appellant to review.

At the conclusion of the evidence on behalf of the plaintiff, a motion was filed by appellant for a directed verdict, upon the ground that the evidence was insufficient to justify a finding that the member died prior to June 18, 1919. This motion, which was renewed at the close of all the evidence, was overruled. This ruling presents the only question of merit for review.

Much of appellant's argument is devoted to a discussion of the ruling of the court striking material parts of the answer. In view of the change in the issues, this ruling was without prejudice, unless prejudice resulted from the statement of the issues and the language of some of the instructions referring to the presumption arising from the absence of the member for seven years. Exceptions were taken to the instructions, but are not assigned as error or pressed upon us in argument.

It is strenuously contended by appellee that the assignment of error based upon the motion for a directed verdict is wholly insufficient, under the rules of this court, to entitle appellant to have the same reviewed on appeal. The motion in form was based upon three grounds, but, in substance and effect, upon but one,—namely, the insufficiency of the evidence to support the verdict. The assignment is not open to objection that it is omnibus in character, for the reason indicated. Perhaps it would have been better if the grounds of the motion had been made a part of the assignment of error; but it was referred to, and the page and lines of the abstract where the same could be found were stated. Notwithstanding the somewhat general character of the assignment, we think it not open to the objections urged. Many of the authorities cited by counsel in which the assignments were held insufficient were based upon the ruling of the court on motions for new trial containing many grounds, or involved rulings upon the admission of testimony without sufficient specification of the rulings complained of. We hold the assignment in question sufficient.

A somewhat detailed statement of the evidence is necessary at this point. The member, as already stated, was unmarried, and of good habits and character. He resided at home with his parents in Shenandoah. He was thin, and not in robust health. The witnesses say that he had an occasional, though not bad,

cough. He does not appear to have had any particular ailment; nor is it shown that his health was to any considerable extent impaired. He left Shenandoah in 1915, and went to Pocatello, Idaho, where he perhaps secured employment as a candy maker. He frequently wrote to his mother, but never wrote to any other member of his family, which comprised appellee, two sisters, and a brother. His mother died December 26, 1916. No reply was ever received from the message sent him advising him of his mother's death, nor has he been heard from by any member of his family since that date. The witnesses testified that he was of an affectionate nature, particularly fond of his mother. The assessments on his certificate were paid by appellee after the mother's death until June 18, 1919. Some effort was made by appellee in 1918 to locate the member. Letters were written by him to the postmaster of Salt Lake City, to the chief of police of Pocatello and those of some other places, to the adjutant general of Idaho, and to the adjutant general of the United States. So far as the records of these officers showed, he had not enlisted in the army. No effort appears to have been made to find out by whom he was employed or where he lived in Pocatello. As to whether his health improved or grew worse after he left Shenandoah, the record is silent. The evidence does not indicate that he was at any time in a position of peril, nor are any facts or circumstances shown, to indicate the manner or time of his disappearance from Pocatello. Appellee never wrote a letter to his son or received one from him. One of his sisters, who resided with the father and mother, occasionally wrote a letter for his mother and addressed the envelope to him. Nothing has been heard or known of the member by his family since the receipt of the last letter to his mother, which was not more than a month before her death.

Are the foregoing facts sufficient to sustain the finding of the jury that the member died before default in the payment of his assessments in 1919? This is the only matter requiring consideration or decision. All of the foregoing evidence was admissible for its bearing upon the fact of the member's death. *Tisdale v. Connecticut Mut. Life Ins. Co.,* 26 Iowa 170; *Seeds v. Grand Lodge A. O. U. W.,* 93 Iowa 175; *Fleming v. Merchants' Life Ins. Co.,* 193 Iowa 1164. The rule that death will be presumed from seven years' unexplained absence has always been

recognized in this state. Likewise, it is the rule in this state that the fact of death may be inferred from facts or circumstances, although seven years have not expired. Both rules are well stated in *Tisdale v. Connecticut Mut. Life Ins. Co.*, supra, which has become a recognized authority on the subject, as follows:

"The rule by no means limits the presumption of death to an absence of the person whose existence in life is in question without tidings from him for the space of seven years; nor does the modification of the rule laid down in the cases cited by defendant's counsel, that such absence for a shorter period, if the person is shown to have been in peril, will raise a presumption of death, exclude evidence of other facts and circumstances which tend to establish the probability of his death. Any facts or circumstances relating to the character, habits, condition, affections, attachments, prosperity, and objects in life, which usually control the conduct of men, and are the motives of their actions, are competent evidence from which may be inferred the death of one absent and unheard from, whatever has been the duration of such absence. A rule excluding such evidence would ignore the motives which prompt human actions, and forbid inquiry into them in order to explain the conduct of men. The true doctrine may be readily illustrated thus: An honored and upright citizen, who, through a long life, has enjoyed the fullest confidence of all who knew him,—prosperous in business and successful in the accumulation of wealth; rich in the affection of wife and children, and attached to their society; contented in the enjoyment of his possessions, fond of the associations of his friends, and having that love of country which all good men possess,—with no habits or affections contrary to these traits of character,—journeys from his home to a distant city, and is never afterward heard of. Must seven years pass, or must it be shown that he was last seen or heard of in peril, before his death can be presumed? No greater wrong could be done to the character of the man than to account for his absence, even after the lapse of a few short months, upon the ground of a wanton abandonment of his family and friends. He could have lived a good and useful life to but little purpose, if those who knew him could even entertain such a suspicion. The reasons that the evidence above mentioned raises a presumption of death are obvious; absence from any other cause, being without motive and incon-

sistent with the very nature of the person, is improbable. It is suggested in argument that such absence may be on account of insanity. That may be possible; but, as death under such circumstances is more probable than insanity, in the absence of evidence thereof, the law raises the presumption of death. Evidence which would point toward insanity as the cause of such absence would, of course, be proper for the consideration of the jury, from which its probability might be determined. The competency of evidence of the character above indicated, from which the fact of the death of an absent person may be found within the period of seven years, is well sustained by authority.''

The member in this case left Shenandoah for the purpose of going west,—whether for his health or not, the record does not show. If his disappearance from Pocatello was mysterious, or coupled with circumstances indicating the probability of death, the facts are not before us. It is significant that his mother was named as the beneficiary in the certificate; that he wrote only to her; that he never corresponded with other members of his family or relatives; and that he paid no dues after notice of his mother's death. The evidence in support of the verdict would be much stronger if it appeared that he had at some time written to his father, brother, or sisters during his absence. It is true that all of the members of his family resided in the vicinity, and were given the opportunity to read the letters written to his mother; but this does not offer a very satisfactory explanation of his failure to at some time write to others. There is no evidence that anyone ever saw him in a place of peril, or that his health declined after he left home. There is no evidence that he was predisposed toward tuberculosis, or that his health was so far impaired that a physician was consulted at any time. He worked and was active in the affairs of the church and the Sunday school. The presumption of death arising from seven years' unexplained absence is not that the absentee died at any particular time, but that he is at the close of that period deceased. On this point, see the extended note following *Butler v. Supreme Court,* 26 L. R. A. (N. S.) 293, 294.

Perhaps the decision of this court most strongly supporting the verdict in this case is *Carpenter v. Modern Woodmen,* 160 Iowa 602. The evidence in that case showed that the absentee was, and had been long, ill; that he had a weak pulse,

and appeared to be afflicted with quick consumption; that he had a bad cough, following his recovery from an attack of pneumonia; that at one time he fainted from weakness, upon receiving letters from his family; that he was much of the time unable to work.

The facts of the cited case were materially stronger than they are in the present case. There is no fact or circumstance shown in the record from which the inference might properly be drawn that the member died prior to June 19, 1919. A finding to that effect would necessarily have to be based upon speculation.

We have made a search of the authorities, and have found a few in which a finding of actual death by the jury was sustained. In each of the cases consulted, there were facts and circumstances from which legitimate inferences of death could be drawn. We cite the cases, without further comment than to say that the facts disclosed therein are materially stronger than in the present case. *New York Life Ins. Co. v. Brame,* 112 Miss. 828 (73 So. 806) ; *Fidelity Mut. Life Assn. v. Mettler,* 185 U. S. 308 (46 L. Ed. 922) ; *Eklund v. Supreme Council of the Royal Arcanum,* 152 Minn. 20 (187 N. W. 826) ; *Butler v. Supreme Court I. O. F.,* 60 Wash. 171 (110 Pac. 1007) ; *Butler v. Supreme Court I. O. F.,* 53 Wash. 118 (101 Pac. 481) ; *Springmeyer v. Sovereign Camp W. O. W.,* 163 Mo. App. 338 (143 S. W. 872) ; *Behlmer v. Grand Lodge A. O. U. W.,* 109 Minn. 305 (123 N. W. 1071)'. As holding to the contrary, upon the record presented, see *Goodier v. Mutual Life Ins. Co.,* 158 Minn. 1 (196 N. W. 662).

The affectionate nature of the absentee appears to have been usually manifested toward his mother. We assume, from the absence of any evidence to the contrary, that the message notifying him of his mother's death was delivered. Just why he should have desired, if living, to separate himself from his father and other relatives can only be left to conjecture. There are no affirmative facts in the record to indicate a reason for his doing so. The presumption of death now obtains; but that question is not involved, as the case was submitted to the jury upon the theory that death occurred while the benefit certificate was in force. The evidence, in our opinion, is insufficient to sustain

the verdict, and the motion for a directed verdict should have been sustained.

The judgment is reversed, and cause remanded.—*Reversed.*

EVANS, C. J., and FAVILLE and VERMILION, JJ., concur.