# DINA MINIKUS CARLSON v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.[1]

January 20, 1933.

No. 29,215.

*Kellogg, Morgan, Chase, Carter & Headley,* for appellant.
*Malmberg & Nelson,* for respondent.

LORING, JUSTICE.

This was a suit by the beneficiary to recover insurance upon the life of one Ed Minikus, who took out the insurance with the appellant in August, 1920. In May, 1923, he disappeared and has never been heard from. The premium due August 7, 1923, was not paid,

[1]Reported in 246 N. W. 370.

and the policy automatically became extended term insurance expiring January 6, 1930, less than seven years after Minikus disappeared. This action was brought more than seven years after his disappearance, and the complaint alleged that the insured died on or about June 27, 1923, and prior to July 1 of that year. The plaintiff had a verdict, and this appeal is from an order denying the defendant's alternative motion for judgment notwithstanding the verdict or for a new trial.

The plaintiff and the insured were married in 1915 and had three boys, born in 1916, 1920, and 1921, respectively. They lived on farms in Mille Lacs and Isanti counties until November, 1922, when the insured, having become heavily involved in debt, gave up farming and moved to Minneapolis, where he got work in a coal yard. In January, 1923, his wife and children joined him in that city. Shortly thereafter the insured left his employment with the coal company and started work in a foundry, where he suffered an injury to his foot which compelled him to stop work. Thereupon his wife took the two smaller children back to her parents in Mille Lacs county and returned to Minneapolis and obtained work for herself in a restaurant. The oldest boy remained with his parents in Minneapolis.

The marital relations of the plaintiff with the insured were very unpleasant. He was addicted to drink and when in his cups was quarrelsome and jealous, frequently accusing the plaintiff of improper conduct and calling her vile names. He got drunk as often as three or four times a week. This drunkenness had commenced while they lived on the farm and increased after they came to Minneapolis.

May 26, 1923, when the plaintiff returned from her work she found that the insured and their oldest boy had disappeared. The insured had obtained money by returning to the store the available groceries in the house and had returned with the boy to the home of plaintiff's parents in Mille Lacs county.

Plaintiff's brother Otto was her only witness. He was living with his parents on the farm in Mille Lacs county at the time that

Ed took the oldest boy there. He said that Ed was acting discouraged, and in telling of his conversation with him said:

"Yes, he said that he brought Louis out there and we should keep him out there, and he was going to pay us for him if we wanted any pay for him, and said he was going to look for work or he didn't know what he was going to do. He said that he would be better off if he signed the insurance over to the boys and he would be better off dead than the way it is going now."

Ed stayed at the farm for about three days and then left without saying good-bye and has not been heard from since.

The sole question presented by this appeal is whether or not there is sufficient evidence to sustain the jury's verdict that the insured died prior to the expiration of the term insurance.

The presumption of death after the continued absence of one unheard of for seven years apparently originated with two early acts of Parliament. The first in 1603 provided for exemption from prosecution for bigamy to one who married a second time after such an absence on the part of a spouse; the second in 1667 provided in regard to certain titles to land that one should be accounted dead who had been absent for a like period. By analogy the presumption of death soon came to be applied in all civil and criminal cases, and it is now regarded as a fundamental principle of the common law, although in many states there are statutory provisions covering the subject, sometimes providing a shorter period than seven years as a basis for the presumption. In this state we have no such statute, and the common law prevails. Two elements enter into the circumstances which give rise to the presumption. There must have been an unexplained absence for the required period, and there must have been no tidings from the absentee. Spahr v. Mutual L. Ins. Co. 98 Minn. 471, 472, 108 N. W. 4; Eklund v. Supreme Council, 152 Minn. 20, 187 N. W. 826; Goodier v. Mutual L. Ins. Co. 158 Minn. 1-7, 196 N. W. 662, 34 A. L. R. 1383. In the case last cited many of the authorities are reviewed. Given the necessary absence unexplained and without tidings, the presumption is that the absentee no longer lives at the expiration of the seven years, but there is no presump-

tion whatsoever as to the time when he died within that period. It remains for the party interested in proving death at an earlier date to show that fact by circumstances from which the inference of death can be legitimately drawn. As on any other question of fact, a jury will not be permitted to guess or speculate in reaching a verdict. Spahr v. Mutual L. Ins. Co. 98 Minn. 471, 108 N. W. 4. Even in the absence of evidence of exposure to some specific peril, a jury may be justified in finding that death occurred soon after an unexplained disappearance when the absentee was happily circumstanced and when his character and habits were such that there is no other reasonably probable reason for his disappearance or absence. However, in the case at bar the insured's marital relations were unpleasant in the extreme. He was a drunkard and insolvent and unable to support or care for his family as he should. He had indicated an intention to seek employment elsewhere. His purpose to abandon his wife is well nigh conclusively shown by his manner of leaving her in Minneapolis.

The respondent contends that the jury was justified in finding that the insured either committed suicide or died of natural causes soon after his disappearance or at least prior to the expiration of the term insurance. There is a prima facie presumption against suicide, and we do not think that the language which the insured used to his brother-in-law expressed any purpose to commit such an act. Fairly interpreted, it expresses an opinion on an unsatisfactory situation rather than a fixed determination to end life. It certainly is not sufficient to overcome the presumption against suicide or to make a question of fact in that regard. The insured expressed his purpose of seeking employment and of contributing to the support of his children if that was desired by their grandparents. There is no indication in the record that the grandparents ever expressed to the insured any desire for compensation for such support. That may possibly be the reason that the insured has never sent any such contribution, but it is more likely that with his habits and characteristics he was unable to do so. It is true that the record shows that he had considerable affection for his children and that very naturally he would have communicated with them on

that account; but we see nothing more in that than the usual failure of tidings which goes to make up the presumption at the end of seven years. His habits and characteristics were such as to justify other inferences than death from this circumstance.

That the record is sufficient to create the presumption at the end of the seven-year period we have no doubt, but that it fails to support a finding that death occurred prior to the expiration of the term insurance is quite apparent. The insured's absence at its beginning was sufficiently explained by his unhappy marital life, his debts, and his desire to seek employment. From the record before us it seems much more probable that with his habits and characteristics he became an itinerant laborer than that he committed suicide or died from other natural causes, none of which are shown by this record to have existed. For valuable notes on the question before us see 34 A. L. R. 1389, and 64 A. L. R. 1288.

We pay little attention to the prosecution which was instituted against the insured for his failure to support his children or to the divorce proceedings prosecuted by the plaintiff. There is no evidence that the insured ever knew of the former; and, while the latter may constitute an admission against the plaintiff that she thought the insured was still alive at the time of the proceedings, it is nevertheless true that out of an abundance of caution such proceedings are often taken for the purpose of preventing any possible prosecution for bigamy although the reappearance of the absent spouse is not expected.

Upon the record as it stands before us, we must hold that as a matter of law the plaintiff has failed to establish the death of the insured prior to the expiration of the term insurance; and, since there is no indication that a better case could be made out on a subsequent trial, we reverse the order of the trial court denying judgment notwithstanding the verdict.