## G. W. WHITE v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.[1]

January 18, 1935.

No. 30,091.

[1]Reported in 258 N. W. 519.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *George W. Jansen,* for appellant.

*S. Segall,* for respondent.

LORING, JUSTICE.

This was an action by George W. White as special administrator of the estate of his son, George N. White, to recover on two industrial insurance policies in which George N. White was the insured. The plaintiff relied upon the presumption of death after an unexplained absence of the insured for a period of more than seven years. The jury returned a verdict for $421.92, the correct amount if plaintiff is entitled to recover. Defendant moved for a directed verdict, which was denied, and has appealed from the judgment entered pursuant to the verdict.

In 1917 the insured, at the age of 16, with his parents' consent, enlisted in the army and saw service in France. He was discharged July 21, 1920. On his return from France he did not return to his former home in Mankato nor did he do so when discharged. During his childhood he had lived with his parents in Mankato. During his service in the army he wrote numerous affectionate letters to them. After his discharge, however, the record disclosed but two postal cards written by him, one from Riverside, California, dated November 13, 1920, and the other from Yuma, Arizona, dated November 30, 1920. These were the last communications which his family had from him. His mother wrote to him at Yuma after receipt of the last postal card, but her letter came back undelivered.

Plaintiff alleged in his complaint that White reënlisted in the army October 14, 1924, at Fort Douglas, Utah, and the records of the War Department show that he enlisted under the name of Harry E. Holmes and claimed no prior service. They also show that November 1, 1924, he "went absent without leave" and has never been returned to military control since that date. The War Department is not informed as to his whereabouts.

In this state there is a rebuttable common law presumption that a person no longer lives which arises from his unexplained absence from his usual place of abode or resort for a period of seven years. In order to initiate the period of required absence it is necessary that the person in question shall have absented himself from that place which was his customary place of abode or resort. His absence from the place where his relatives reside, which is not his own place of residence or abode, or their failure to hear from him does not raise any presumption of death. 8 R. C. L. 709; 17 C. J. 1170; Hitz v. Ahlgren, 170 Ill. 60, 64, 48 N. E. 1068; City of Litchfield v. Keagy, 78 Ill. App. 398; Stinchfield v. Emerson, 52 Me. 465, 83 Am. D. 524. In the case at bar the insured spent nearly two years in France with the army and upon his return did not go home on furlough; nor did he do so upon his discharge July 21, 1920. His parents did not know where he went. They heard from him twice by postal cards in November, 1920. They heard no more from him, and his whereabouts since that time are unknown, except that October 14, 1924, he reënlisted in the army at Fort Douglas, Utah, under the name of Harry E. Holmes. This was a fraudulent enlistment because he claimed no prior service. Perhaps he so enlisted on account of an unsatisfactory record of prior service. His letters show commitment to the guardhouse on at least two occasions, and the date of his discharge taken in connection with his letters indicates that he made up considerable time which had been spent in confinement. No doubt he soon realized that this reënlistment was punishable, and he left his organization without leave November 1, 1924, and was never returned to military control. He has never been heard from since. This history makes it obvious that the home of his parents had, long prior to his disappearance, ceased to be his home or even his place of usual resort. Apparently he was a wanderer in the southwest in 1920. Where he was from 1920 to 1924 no one knows. From 1924 on, if alive, he was a fugitive from military justice. These facts conclusively prevent a presumption of death based upon an absence from Mankato or upon the failure of his parents to hear from him. It could only arise upon a showing based on his absence

from his usual abode or resort, if any, wherever that may have been.

This case is readily distinguished from Eklund v. Supreme Council, 152 Minn. 20, 187 N. W. 826, 828, where a husband, under fear of criminal prosecution, left his wife and family and, although he did not return to his home, expressed an intention of rejoining his family, kept in constant touch with them, and, under an assumed name, kept them advised of his whereabouts. This court there said [152 Minn. 25]:

"A man may be away from home following an occupation which takes him from place to place. He writes regularly to his wife, with whom his relations are cordial. With no explanation, his letters cease to come. She makes diligent inquiry, but cannot find him."

And in another place in that opinion this court said [152 Minn. 24]:

"It seems to us, judging from the regularity with which he wrote to his wife and foster mother for the six years following his departure from Moorhead, that they would have heard from him after July 3, 1911, if he were not dead. There was no reason for the abrupt termination of the correspondence at that time. Apparently he entertained a genuine affection for his family. There is nothing in the correspondence to indicate an estrangement from his wife or that his expressed desire for a reunion in 1911 was insincere. If the had not died prior to 1915, it would seem that his wife's persistent and widespread inquiries would have elicited some information as to his whereabouts."

The distinction between that case and this upon the facts is clear. In Carlson v. Equitable L. Assur. Soc. 188 Minn. 43, 246 N. W. 370, where we said *obiter* that the record was sufficient to create the presumption at the end of the seven-year period, the absentee was the father of three boys, for some of whom at least he appeared to have considerable affection. It seems apparent in this case that the insured had become a wanderer, and we must say as a matter of law that the jury could not reasonably find upon the circumstances before them that the probability that he is dead

outweighs and preponderates over the theory that he has become a wanderer. The seven years' presumption does not assist in the support of the verdict because the circumstances are not such as to give rise to that presumption or to initiate the required period of disappearance.

The judgment is reversed.

DEVANEY, CHIEF JUSTICE (dissenting).

In my opinion the evidence was sufficient to permit the jury to find the existence of such facts as would give rise to a presumption of death. This is the only question presented. Since defendant made no motion for a new trial but prays here, in effect, for a judgment in its favor notwithstanding the verdict, the view of the evidence most favorable to plaintiff must be accepted. Thom v. N. P. Ry. Co. 190 Minn. 622, 252 N. W. 660.

In order to raise a presumption of death there must be (a) a continued absence for a period of seven years; (b) no tidings must have been received during such absence; (c) the absence must be from the place of usual residence and abode; (d) the absence must be unexplained; and (e) due and diligent search for the missing person must have been made. See Carlson v. Equitable L. Assur. Soc. 188 Minn. 43, 45, 246 N. W. 370; Eklund v. Supreme Council, 152 Minn. 20, 24, 187 N. W. 826; Goodier v. Mutual L. Ins. Co. 158 Minn. 1, 7, 196 N. W. 662, 34 A. L. R. 1383.

(a) It is undisputed that plaintiff's son has been continually absent for more than seven years; and (b) that no direct tidings have been received by those who naturally would hear from the son since his disappearance. (c) In my opinion the absence is from the usual place of residence and abode. It is admitted that the son lived with his parents in Mankato at the time of his original enlistment in the army in 1917. During his stay in the army he wrote numerous letters to his parents in Mankato. These were very friendly and contained frequent reference to "home" and "coming home." To me these letters indicate that the son considered his home and place of residence and abode to be with his parents. While in the army he was an itinerant, but always he thought of his home and place of abode as with his father and

mother. The majority opinion presumes that the son intended to and did abandon Mankato as his home and became a wanderer. There is absolutely no evidence to support this inference. Such an assumption cannot be made in the absence of evidence. Rather we should presume a lack of such intent on the son's part in view of the above mentioned letters. Cases cited and relied upon by the majority opinion where relatives, with whom the disappeared person had not made his residence, had received no tidings and where it was held that absence from such place was not absence from the usual place of abode are not in point. In this case the son's own parents, with whom he had resided before enlistment and to whose residence he referred as "home," did not receive tidings after 1920.

(d) In my opinion the jury could find the absence unexplained. No reason is given as to why the son, if alive, should have remained away from home since 1920 without sending tidings or communicating with his parents and his home. He never claimed a bonus of $500 from the state of Minnesota to which he was entitled by virtue of his having served in the war, nor did he claim a similar bonus from the federal government, though in some of his letters he made reference to the same. It is stipulated between counsel that the records of the United States War Department show that this son, G. N. White, enlisted in the army a second time under an assumed name, at Fort Douglas, Utah, October 14, 1924. It is to be noted that this stipulation is not to the effect that the son actually did enlist a second time but is merely a stipulation that the records show him to have made a second enlistment. Hence, even though it cannot now be questioned but that the records show this, it is still a question for the jury, using the stipulated fact as a substitute for proof, whether the son actually was alive in 1924 and reënlisted. True, the complaint states that the son enlisted in 1924, but this is denied by a general denial in the answer and so is put in issue. It seems to me that the jury might have chosen to disbelieve the records in view of plaintiff's testimony and the other facts and inferences which tended to show that the son had been absent and unheard from since 1920 and that if alive he

would have returned home or at least sent tidings. Taking the view of the evidence most favorable to plaintiff, as we must, this conclusion seems inescapable.

(e) I believe that the jury might find, considering the appearance, intelligence, and circumstances of this plaintiff, that the efforts he made in notifying the American Legion and the defendant insurance company offices of the son's disappearance constituted due and diligent search. It could be found, I believe, that a reasonable man in plaintiff's circumstances would do about what plaintiff did in an attempt to search for his son. In my opinion the jury's finding should be affirmed.

