CHAIA SCHNEIDERMAN, Plaintiff, *v.* THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant.

City Court of New York, Trial Term, Bronx County, October 23, 1936.

*Lew Feldherr*, for the plaintiff.

*Frederick L. Allen* [*Grattan B. Shults* and *John G. Kelly* of counsel], for the defendant.

ADLERMAN, J. Action tried by the court, a jury having been waived by the parties.

The plaintiff as beneficiary brings this action to recover upon a ten-year endowment policy of insurance in the face amount of $2,000 issued by the defendant company upon the life of Joe Schneiderman, the plaintiff's son.

The insured, twenty-seven years of age, single, a union printer by trade, residing with his married sister, Mrs. Murray Gold, and her husband at 585 East One Hundred and Sixty-ninth street, Bronx borough, left that residence on the morning of July 16, 1925, and never returned thereto, nor has his whereabouts been made known nor has his body ever been recovered, nor has he ever communicated with his friends or relatives. The proof establishes that at the time of his disappearance he was in perfect health; that he earned an average of sixty dollars per week as a pressman; that he had been employed for some years by such firms as the American Bank Note Company and Bowles Printing Company and was a full-fledged union member with dues paid and in good standing. Though he was out of employment at the time of his disappearance, for several weeks he had received temporary employment through the union for a couple of days per week.

The insured had no police record and, as far as could be ascertained, no mental difficulties.

It would appear that his relations with his family and friends were good, and that he had moved away from his parents' home and lived at his sister's home. This was satisfactorily explained by his sister that he did so because his parents were extremely orthodox and observant of their faith and religious customs, and further that the insured was the only child left at home, where lights would be kept out during the Sabbath and bed time started in the early hours of the evening. There was no radio at home and no means of amusement, and being a young man spirited and fun loving, he went to live with his younger sister, who was nearly his age and with whom he had grown up from boyhood. There is a statement made by the brother-in-law, Mr. Gold, to the police to the effect that the insured was not content with his home environment and that he left home because of such conditions, but I am inclined to discredit such statements, as such untruths seem to have been uttered for the purpose of safeguarding the health of his wife, and to prevent annoyance by further investigation, as his wife fainted every time a telephone call came into his place of business requesting them to go to the morgue to identify another cadaver. Although the insured had on deposit with the Tremont Credit Corporation the sum of $150, it appears that some time previously to his disappearance (no date being fixed) he had pawned his watch and had realized forty dollars.

The search for the insured was most exhaustive. Police reports, radio broadcasts, morgue and hospital searching, advertising among his friends and relatives, advertising among the unions in his trade,

national advertising in a trade magazine, letters addressed to Jewish language newspapers and the offer of $1,000 reward were all resorted to in an exhaustive effort to locate a single clue as to his whereabouts.

In this case it appears that the insured took out the policy of insurance on January 29, 1925; that he paid a semi-annual premium thereon and that he disappeared on July 16, 1925, and that a premium payable on July 29, 1925, was also paid, this premium having been paid by one David Schneiderman, a brother of the insured, and by the payment of the second premium the policy remained in force until January 29, 1926, and thereafter for twenty-one days pursuant to the grace clause therein contained and did not lapse until March 2, 1926.

This action was begun on January 19, 1933, and eleven years have elapsed since the disappearance of the insured.

It is the contention of the defendant that in the absence of some specific peril or that the insured was subjected to some impending danger, there is nothing from which the court may infer life ceased before the expiration of seven years or before the policy lapsed for nonpayment of premium.

This case presents a novel question not heretofore decided by the courts of this State, and nowhere in our reported decisions can we find a statement of facts analogous with the case at bar, where the policy had lapsed shortly after the date of disappearance.

The New York rule, as defined by the Court of Appeals in *Butler* v. *Mutual Life Ins. Co.* (225 N. Y. 197, 203), is as follows: " Before a court is justified in presuming the death of a person, at a designated time, because of his absence, the proof should remove the reasonable probability of his being alive at the time." (See, also, *Matter of Wagener*, 143 App. Div. 286; *Fuller* v. *New York Life Ins. Co.*, 199 Fed. 897; *Davie* v. *Briggs*, 97 U. S. 628; *Matter of Board of Education of New York*, 173 N. Y. 321; *McCartee* v. *Camel*, 1 Barb. Ch. 455.) The burden of proving facts sufficient to raise the presumption of death from seven years' absence rests upon the party asserting such death.

The New York rule *as to the time of death* is also stated in *Connor* v. *N. Y. Life Ins. Co.* (179 App. Div. 596) as follows: " The general rule may now be stated to be that seven years' absence creates a presumption that death took place at the end of that period. But we think that reason and probability require that the rule be modified so that if seven years' absence follows a catastrophe, occurrence or hazard whereby the absent one was subjected to peril of his life of such a character that the evidence of his death might be destroyed with death itself — as for instance death in a conflagration, or by

drowning — the inference of fact may be drawn that the death occurred at the time of such peril. The presumption that the death occurred at the end of seven years obtains only by the necessity of the case in the absence of evidence indicating death at another time. When there is such evidence, the necessity for presuming that death occurred at the end of that period no longer exists."

Surrogate WINGATE in *Matter of Katz* (135 Misc. 861) aptly states: " It may be said without fear of successful contradiction, that there are few questions in the law upon which the conceptions of a majority of the bar are less clear than on that of a presumption of death from absence. This is no doubt due in part to the circumstance that determinations on such questions are based largely on the facts presented in the particular cases, no two of which are quite alike, but a material contributing factor has unquestionably been the frequently contradictory enunciation of legal principles by the courts."

It is urged by the defendant here that the jury cannot fix the date of death within the period of seven years' absence by mere speculation or guess, and seven years' absence creates a presumption that death took place at the end of that period.

In the case at bar this court is both court and jury, and from all the evidence this court can draw but one reasonable conclusion, that the insured walked out of his home on July 16, 1925, and met death at that time in such a way that the evidence of death was destroyed and that is the reason nothing has been heard from him in the past eleven years. No other reasonable conclusion can be drawn from the facts presented in this case. No motive for suicide exists, no motive for leaving home to seek fortune elsewhere exists, no reason for deliberate disappearance exists, no preparations for such disappearance were made, no mention of such intention was ever made to relatives or friends. Being single and with a good trade and a good earning capacity, this insured had everything to live for and no reason has been shown why he should want to disappear and remain hidden.

While the decisions in this State have not been consistent in their rulings, the tendency of the courts at the present time seems to hold that circumstances may justify a finding of death before, or they may be such as to give rise to no presumption at or after the expiration of seven years. Each case must necessarily depend upon its own facts. (*Matter of Wagener*, 143 App. Div. 286; *Stevens* v. *Metropolitan Life Ins. Co.*, 151 Misc. 676; *Gardner* v. *N. W. Mutual Life Ins. Co.*, 246 App. Div. 868.)

Whether or not the absence is unexplained, except by death, or, in fine, whether or not the presumption arises from the evidence, is almost always, of necessity, a question for the jury. Surrogate WINGATE in *Matter of Katz* (135 Misc. 861), said: " While the presumption of death has at times been referred to as one of law, the better opinion holds it to be a mixed presumption, with the factual element the more important." (See editorial entitled " Seven Years Absence — Presumption of Death " appearing in the New York Law Journal in three installments, on July 18, 19 and 20, 1932.)

In *Matter of Wagener* (143 App. Div. 286 [1911]) Mr. Justice MILLER said: " That the rule was adopted   *   *  *   as a rule of necessity " and that " it is necessarily an artificial rule, depending for its application upon the known facts, regardless of what the actual fact may be. Rights are not to be held in abeyance indefinitely on account of the absence of a person of whom no trace can be found. He may not be dead, but he will be presumed to be dead for the purpose of fixing the rights of those known to be living."

That the rule contains the " element of chance " was the opinion of Mr. Justice HOLMES, of the United States Supreme Court, in holding valid a Massachusetts statute which limited the time in which a person may recover his property after he had been presumed dead: " Now and then an extraordinary case may turn up, but constitutional law like other mortal contrivances has to take some chances, and in the great majority of instances no doubt justice will be done." (*Blinn* v. *Nelson*, 222 U. S. 1; 56 L. Ed. 65; 32 Sup. Ct. 1.)

It might be well to refer to the cases in other jurisdictions where identical problems were presented and where suit has been instituted upon policies which have expired or lapsed and where the plaintiff in each instance urged that death occurred prior to the lapse of the policies. All these cases resulted in plaintiff's verdicts. (*Ballinger* v. *Conn. Mutual Life Ins. Co.*, 167 Tenn. 367; 69 S. W. [2d] 1090; *Munson* v. *New England Mut. Life Ins. Co.*, 126 Neb. 775; 254 N. W. 496; *Sackett* v. *Met. Life Ins. Co.*, 260 Mich. 466; 245 N. W. 499; *Sherman* v. *Minn. Mutual Life*, 191 Minn. 607; 255 N. W. 113; *Carlson* v. *Equitable Life*, 188 Minn. 43; 246 N. W. 370; *Spahr* v. *Mutual Life*, 98 Minn. 471; 108 N. W. 4; *Eklund* v. *Supreme Counsel R. A.*, 152 Minn. 20; 187 N. W. 826; *Brotherhood of Locomotive Firemen & Enginemen* v. *Hall*, [Tex. Civ. App.] 64 S. W. [2d] 1044; *Sovereign Camp of Woodmen* v. *Robinson*, [Tex. Civ. App.] 187 S. W. 215; *Butler* v. *Supreme Court I. O. F.*, 53 Wash. 118; 101 P. 481; *Springmeier* v. *Sovereign Camp Woodmen of the World*,

163 Mo. App. 338; 143 S. W. 872; *Northwestern Mutual Life Ins. Co.* v. *Stevens,* 71 Fed. 258; *Wilson* v. *Prudential Insurance,* 132 Me. 63; 166 Atl. 57.)

From all the evidence presented, I am of the opinion that the deceased met his death at the time of his disappearance or shortly thereafter and plaintiff is entitled to recover from the defendant the sum of $2,000, the face amount of the policy issued.

Verdict directed in favor of plaintiff in the sum of $2,000. Ten days' stay and thirty days to make a case.