## IN RE ESTATE OF GUSTAV EDWIN HOKANSON.
## LEONARD SAMUELSON v. CHARLEY ANDERSON.[1]

December 11, 1936.

No. 30,977.

*Henry Nycklemoe* and *Charles A. Lund,* for appellant.
*Owen V. Thompson,* for respondent.

HILTON, JUSTICE.

Appeal from a judgment of the district court affirming an order of the probate court denying letters of administration upon the estate of Gustav Edwin Hokanson.

Gustav Edwin Hokanson, hereinafter referred to as Hokanson, the son of Gustav A. Hokanson and his wife, Louise, was born in

[1]Reported in 270 N. W. 689.

1875. He left home in 1904 never to return. He had one sister, Alma, who was born in 1878 and died in 1895. The father died in 1916. He bequeathed and devised all his property to his wife, Louise. Subsequently she married the respondent, Charley Anderson. There were no children of this marriage. February 10, 1935, she died testate, but failed to make any disposition of the bulk of her large estate. The respondent, as husband, claims the residue.

Subsequent to the death of Louise Hokanson the appellant, claiming a portion of the estate through Hokanson, as next of kin, filed a petition for probate of the latter's estate. Respondent filed objection thereto, and the probate court sustained the objection on the ground that there was no estate of Hokanson's to probate. On appeal to the district court there was an affirmance and judgment so entered.

Appellant's position was based upon the theory that there was an estate to be probated, the claim being that Hokanson took as one of the heirs of his mother. This proposition is predicated on the assertion that it must be presumed that Hokanson died as of the date of filing the petition here involved. Respondent objector contends that as seven years' unexplained absence, without tidings, raises a presumption that the absentee is no longer living, Carlson v. Equitable L. Assur. Soc. 188 Minn. 43, 246 N. W. 370; Spahr v. Mutual L. Ins. Co. 98 Minn. 471, 108 N. W. 4; see 19 Minn. L. Rev. 777, et seq., Hokanson must be presumed to have died no later than 1915, i. e., seven years after he was allegedly last seen. In such situation there would be no estate to probate for he would have predeceased his mother, through whom the claim here is made. Appellant submits that two of the elements necessary to raise the presumption of death are missing for the reason that (1) the absence is explained, and (2) there have been tidings.

Hokanson left home in 1904. A witness for appellant testified that one Crooks told him that he had seen Hokanson in North Dakota in 1908 and had talked to him. This testimony is by no means persuasive. Neither the time of the year nor the exact place in North Dakota could be fixed. It was hearsay of the most obvious sort, and, although no objection was made thereto, it has

very little, if any, probative value. Even if relied upon, it does not help appellant's cause as no tidings have been had since that date—1908. The seven-year period necessary to raise the presumption that the absentee was no longer living would have expired in 1915 provided there had been nothing since to rebut it.

Hokanson appeared to be a strong, healthy, and robust young man at the time he left home. He was 29 years of age. He worked for his father in the latter's livery stable. He had many friends, drank some, but never became inebriated as far as known. He was a lover of horses, cared but little for parties and dances, was an unassuming, happy-go-lucky sort of an individual, never morose or moody. He was of a peaceful disposition. Certainly he was not of such a nature that it would be likely for him intentionally to drop so completely out of sight so as to lose all contact with his close friends as well as with his father.

However, to explain his absence there was testimony that Hokanson and his mother seldom were on friendly terms. It is said that he often expressed dissatisfaction with the treatment accorded him at home. There was testimony that on occasions, in the presence of his mother, he stated: "I am going to get out of this hell." The witness so testifying did not see Hokanson after 1897, nearly seven years before he left home. Not much weight need be given that evidence. Another witness testified that Hokanson told him "I am going west." However, that was in 1901, three years before he actually left. The circumstance that he did not leave until several years after those statements were made indicates that they may have been made with no intention of ever following them out.

It was related that Mrs. Hokanson, about a minute after her daughter Alma died, stated to her son Hokanson, "Why couldn't it have been you instead of Alma?" That was in 1895. It could not have greatly influenced Hokanson's action almost ten years later—the time when he was last seen at home. Further, the statement was made at a tragic time in the life of Mrs. Hokanson and cannot be as fully credited as would a statement made at a more rational moment. There was testimony that Mrs. Hokanson was a heavy drinker. It is a factor to be considered in weighing her statements.

To dispute the testimony that Hokanson's home life was not exemplary was testimony of other witnesses that the relations between Mrs. Hokanson and her son were "all right," and that although they had their differences they were of the type found in the ordinary family. Hokanson and his father got along well. The father thought his son a good businessman.

The last day Hokanson was seen in his home town he stated to one of his friends that he was going on the freight train and was never coming back. The friend to whom this was confided testified that he himself believed Hokanson would come back. On a previous occasion he had left but later returned. Hokanson's father was financially well off, but at no time did the son ever make inquiry as to any share of the estate to which he might be entitled. In 1903 the father made a will leaving all of his property to his wife, the mother of Hokanson, but there is nothing to show that the son ever knew of this. In any event, it would have been only natural for him to assume that he would some day have a worth-while inheritance from his mother.

For information resulting in the locating of his son, Hokanson's father once offered a reward of $1,000. At another time he offered a friend $500 if he would find the boy. Traveling men were asked to aid in the search. Letters were sent to western states and towns in the hope that Hokanson might be found—all to no avail. An answer to one of those letters contained the information that the body of an Ed Hokanson had been buried in a potter's field near Seattle. The description somewhat answered that of the missing man. Although no reliance can be placed thereon because of its hearsay character, it does at least show that strenuous efforts were made to find him.

There was some conflict in the evidence, but it was amply sufficient to support the findings of the lower court. In Carlson v. Equitable L. Assur. Society, 188 Minn. 43, 246 N. W. 370, the absentee left home at a time when his marital relations were extremely bad. He was insolvent, a drunkard, and had expressed an intention of seeking employment elsewhere. This court there stated, *obiter*, that it had no doubt that an unexplained absence for seven

years, with no tidings, even under those circumstances, was sufficient to create the presumption that the party was no longer living. The absence there considered could have been much more easily explained than the one here. Even though Hokanson was sincere in his statement that he was never coming back, it does not necessarily follow that he intended to lose all contact with his former associates.

Appellant contends, however, that Hokanson's death can only be presumed as of the date of the filing of the petition here involved. It is argued that as the inference of death grows stronger the longer the period of absence, Chapman v. Kimball, 83 Me. 389, 22 A. 254 (the seven-year period being merely the minimum time required to raise the presumption), the facts here although not sufficient to establish an inference of probable death in 1915, the 20 years' or more absence since then does tend to do so. Then, assuming that to be true, appellant, relying on In re Losee's Estate, 46 Misc. 363, 94 N. Y. S. 1082, in which it was indicated that the time of death ordinarily will date from the decree adjudging the party dead, urges that Hokanson's death should be presumed as of the date the petition here was filed.

In no instance will the absentee be presumed dead, in the absence of statute, prior to the expiration of the seven years. Therefore courts sometimes conveniently say that the missing party is no longer living after the passage of that period of time. It is not that the filing of the petition or the rendering of the decree fixes the date of death as of any particular time, but rather that it is held that the absentee is no longer living as of that date.

In order that there be a Hokanson estate to probate, it would be necessary to find that Hokanson did not predecease his mother, for it is through her that the claim is derived. It also would be necessary to find that he died before the petition for probate was filed, for obviously he must be dead in order to allow of that procedure. The mother died February 10, 1935. The petition was filed April 9, 1935. For appellant to prevail it would be essential that there be a finding that Hokanson died between those two dates. That would not be warranted. There was no evidence whatever as

to the actual time of his death. There is no presumption as to the specific time of death. Eklund v. Supreme Council, 152 Minn. 20, 187 N. W. 826; Davie v. Briggs, 97 U. S. 628, 24 L. ed. 1086; 19 Minn. L. Rev. 777, 790. The burden was on appellant to prove that Hokanson died during the time contended for. That burden has not been sustained.

Although this case might well be determined on the simple proposition that there is no presumption as to the specific time of death, we have been constrained, because of able and insistent argument of counsel, to go fully into the evidence and each contention advanced. We have given consideration to the numerous cases cited but on no theory can we see how appellant could prevail.

Affirmed.