JOSHUA COX, APPELLEE, V. FRANCIS M. ELLSWORTH
ET AL., APPELLANTS.

1.  **Death:** PRESUMPTION OF, FROM ABSENCE. The death of an
    absent person may be presumed in less than seven years from
    the date of the last intelligence from him, from facts and circum-
    stances other than those showing his exposure to danger which
    probably resulted in his death. *Tisdale v. Connecticut Mutual
    Life Ins. Co.*, 26 Ia., 170.

2.  ———: PRESUMPTION OF, FROM CIRCUMSTANCES. Evidence of
    character, habits, domestic relations, and the like, making the
    abandonment of home and family improbable, and showing a
    want of all those motives which can be supposed to influence
    men to such acts, may be sufficient to raise the presumption of
    death, or from which the death of one absent and unheard from
    may be inferred without regard to the duration of such absence.
    *Ibid.*

APPEAL from Hamilton county. Tried below before
NORVAL, J.

*Austin J. Rittenhouse* and *William P. Hellings*, for ap-
pellants, cited: *Burr v. Sim*, 4 Wharton, 150. *Eagle's
Case*, 3 Abbott, 218. *Proctor v. McCall*, 23 Amer. De-
cisions, 135. *Holmes v. Johnson*, 42 Pa. State, 164.
*Miller v. Beates*, 8 Amer. Decisions, 658. Abbott's Trial
Evidence, 74.

*Alfred W. Agee*, for appellee, cited: *Jamison v. Smith*,
17 Rep., 300. *John Hancock v. Moore*, 34 Mich., 41.
Best Evidence (Morgan's Ed.), § 409. *Tisdale v. Insur-
ance Co.*, 26 Iowa, 170. *Ryan v. Tudor*, 31 Kan., 366.
*Hancock v. Insurance Co.*, 62 Mo., 29.

COBB, CH. J.

This is an action in equity brought in the district court
of Hamilton county, by Joshua Cox, plaintiff, against

Francis M. Ellsworth and wife, defendants, to reform an error or mistake in a deed of real estate executed by said defendants to one Mitchel Clement, under whom the plaintiff claims. The alleged error or mistake consisted in a misdescription of the land intended to be described in and conveyed by the deed. The defendants answering denied that there was a mistake or error in the deed, and denied the death of Mitchel Clement, their grantee. The deed under which the plaintiff claims his right in the premises was executed by Sarah J. Clement, widow or wife, and Minnie L. Clement, only child of said Mitchel Clement. This land was purchased and deed received by said plaintiff, and executed by said Sarah J. Clement and Minnie L. Clement on the theory that said Mitchel Clement was deceased prior to the date thereof—November 21, 1881.

The cause was tried to the court, which found all of the issues for the plaintiff, and adjudged, decreed, and ordered the said deed reformed and corrected as prayed by the plaintiff in his petition, etc.

The cause is brought to this court by the defendants by appeal. The case presents two questions:

1. Was there a mistake in the description of the land sought and intended to be conveyed by Francis M. Ellsworth and wife to Mitchel Clement under date June 9, 1875?

2. Was Mitchel Clement deceased prior to November 21, 1881?

The deed as recorded describes the land conveyed as "the south half of the north-west quarter of section 34, in township 10, range 5 W. It was amply proved on the trial that this land was entered under the homestead law prior to any of the transactions between Ellsworth and Clement by one Thomas C. Klumb, who continued to own and occupy it until long after the date of said transactions. The defendant F. M. Ellsworth presented his own deposition, taken in Washington Territory, as evidence on the part of the

defendants. In his deposition he does not claim that he ever owned the land actually described in the deed to Clement; but he does swear that he did *not* intend by the said deed to convey to Clement the south half of the north-west quarter of section 34, in township 11, range 5 W., the only tract of land that he is proved to have owned in Hamilton county at that time. On the other hand, Mr. Agee, a witness on the part of the plaintiff, testified that he was intimately acquainted with the defendant Francis M. Ellsworth in the fall of the year 1874, and for three or four years thereafter; that in the fall of 1875 he had a correspondence with said defendant (defendant residing at Seward, and witness at Aurora, Hamilton county) in reference to this land; that one Hyatt came to witness, who was then a law partner of said Ellsworth, and inquired if Ellsworth would sell the said tract of land, the south half of the north-west quarter of section 34, in township 11, R. 5 W.; that at the request of said Hyatt witness wrote to Ellsworth in regard to said tract of land, whether it was for sale, and the price and terms; that Ellsworth wrote a letter to witness in reply. Said letter having been destroyed at the time of the closing up of the partnership business between witness and defendant, witness was permitted to state the contents of the letter, and testified as follows: " In reply to my letter he wrote me that he did not own the land at all, that he had sold it. I saw Mr. Ellsworth, and we had frequent conversations about it. After he wrote that, I saw Mr. Hyatt, and Mr. Hyatt told me that the record showed it was his, and I went and examined the record, and found that so far as the record showed that the title was still in Ellsworth, and at the first time I saw Ellsworth, I think, at any rate after that time, I spoke to him about it, and told him that the record showed he still owned the land. ' Well,' he said, ' it is a mistake in the record.' He said he had sold the land, and that there was some mistake about it. I think that we went to

the court-house and examined the records in reference to
the matter, and took the index and looked through, and we
found that the title was still in Ellsworth, and that he had
never made any conveyance of it after he received the con-
veyance from Lewis, and on searching the index we found
where a deed from Ellsworth to Clement (I can not say
that I now remember what the name was), but I know
that we traced out this deed from him to another party,
and we found that it appeared of record that the deed cov-
ered the south half of the north-west quarter of sec. 34,
town. 10, range 5, instead of town. 11, range 5; and Ells-
worth said that undoubtedly there had been a mistake
made in the deed in recording it, and that he was sure if
the party looked up the original they would find it was all
right, and it would describe the piece of land as in town.
11, instead of town 10.    I had several conversations with
Mr. Ellsworth about the matter, and I told Mr. Ells-
worth what Mr. Johnson claimed about the matter, and
he still insisted that the deed would be found to be all
right, and that it must have been a mistake in the record.
The last conversation I had with him occurred since he
moved out to Washington Territory.    He came back here,
and that is, I believe, the first time he claimed to still own
the tract of land out here in town. 11."    .

Upon this and other testimony I do not think that the
court could have found otherwise than that "there was an
error and mistake inadvertently made in the description
of the premises intended to be made," etc.    Some stress is
laid in the deposition of defendant on the assertion made
by him that if there was a mistake in the description of the
land in the deed it was not his mistake, but the mistake of
Mills, the agent of the grantee.    I do not think it would
make any difference whose mistake it originally was.    By
executing and acknowledging the deed he adopted its
terms, and if there was a mistake in it, though made by
the draftsman, whoever he might be, so that the deed did

not express the true intention of the grantor, a court of equity will reform it so as to comply with such intention.

On the second point, it appears from the record that about five years previous to the date of the conveyance by Sarah J. and Minnie H. Clement to the plaintiff, Mitchel Clement was a man of about sixty-three years of age, married, and had been married about 17 years, his family consisting of his wife and an only daughter, a bright and intelligent girl of about fifteen; he being of sober and industrious habits, greatly attached to his family and home, in easy pecuniary circumstances. He resided with his family in his own house in the village of Forrest, Livingston county, Illinois. His business had been for many years that of purchaser of corn. At this time the active season for that business was just about to commence. He had just finished repairing his cribs and putting in new scales for the purpose of weighing corn. Under these circumstances, in the early part of the month of December, after eating his breakfast in the morning, he as usual left his house and went into the village without expressing his intention of going away anywhere, and without taking anything with him but his every-day clothes on his back. He never returned, nor did his family or friends or any of the citizens of Forrest ever see or hear of him so far as is known, except to learn from the bankers, where it seems he had some money on deposit, at the neighboring city or town of Fairbury, about five miles distant, who stated to the wife of the missing man that he came into the banking house on that day and drew out his money which he had on deposit there, amounting to about $1,800. All of his relatives and connections known to his wife and daughter were corresponded with for news of the missing man, and extensive search made by the people of Forrest for his body in case any accident or casualty had befallen him, but all without effect.

Now then, was this evidence sufficient, after the lapse of

five years, to sustain the finding of the court that Mitchel Clement was dead? By reference to the text-books and cases, it seems to be the settled rule both in England and this country that seven years is the period at which the presumption of continued life ceases. But this period may be shortened by the proof of such facts and circumstances connected with the person whose life is the subject of the enquiry as, when submitted to the test of reason and experience, would force the conviction of death within a shorter period. Under the rule above stated, if any person domiciled in the city of Lincoln leaves the place of his residence on a journey of business, health, or pleasure, or simply disappears and does not return, nor is heard of by any person at said city or elsewhere, so far as is known to the authority making the enquiry, until after the lapse of the period of seven years, the presumption that such person is still in life ceases to exist and he is presumed to be dead, without regard to any fact connected with the circumstances, life, or habits of such person. But when the enquiry arises before the expiration of seven years, and the facts and circumstances of the person are proved to have been such as to compel the thoughtful and experienced mind to believe that, if still living, such absent person would have returned to or communicated with his home, wife, children, relatives, or friends left behind, or to the care and enjoyment of property abandoned, and that he has never returned—in such case, although the period of seven years has not elapsed, the presumption of continued life may be held to have ceased.

The case of *Tisdale v. Connecticut Mut. Life Ins. Co.*, 26 Ia. R., 170, is a strong case and quite in point to the case at bar. This was an action by Mrs. Tisdale against the life insurance company upon a policy of insurance on the life of Edgar Tisdale, her husband. Of course, the leading fact to be proved by her was the death of Edgar Tisdale. The case does not show the date of the com-

mencement of the suit, but as the opinion of the supreme court was filed December 12, 1868, it is fair to presume that the suit was commenced in the district court as early as the first of that year. The evidence tended to prove that Edgar Tisdale "was a young man of exemplary habits, excellent character, of fair business prospects, respectably connected, and of the most happy domestic relations. He had the fullest confidence of his friends, and the entire affection of his wife, and was living in apparent happiness, with no cause of discontent with his condition which would have influenced him to break the domestic and social ties with which he was so pleasantly bound to life. Visiting Chicago, September 25, 1866, upon business, he was last seen by any acquaintance on the corner of Lake and Clark streets in that city about 3 o'clock of that day. No trace of him was afterwards discovered, though his friends made every effort to find him and ascertain the cause of his mysterious disappearance. A large reward was offered through the newspapers for information that would lead to his discovery either dead or in life. The detective police were employed to search for him, without results. No tidings have been received of him, and not the faintest trace of the cause or manner of his disappearance has been discovered. The district court instructed the jury that "the law presumes the existence of a person, when duly proved, to continue until the contrary is shown by some sufficient proof, or, in the absence of such proof, until a different presumption arises. Such presumption arises in law after the expiration of seven years without any intelligence concerning such person; but upon the issue of the life or death of such person, a jury may find a presumption of death from the lapse of a shorter period than seven years, provided other circumstances concur. These other circumstances must be facts proven or presumed to be true, the existence of which being so established, gives reasonable ground for the presumption of such

death; such as, for instance, that such person is proven to have sailed on a voyage which should long since have been accomplished, and the vessel in which he sailed has not since been heard from, from which fact the loss of the vessel and those on board will reasonably be presumed; or that such person is shown to have last been in a house destroyed by fire, or a tornado, at or so near the time of its destruction as to furnish a reasonable presumption that he perished in it. But in the absence of proof of some such circumstances no amount of probabilities arising from continued absence or neglect to write, or from confidence in the character or habits of the person alleged to be dead, or in his previous declaration of intention, will be sufficient to warrant the presumption of death within seven years, because the law fixes that period for a presumption of death to arise from such circumstances." The jury found for the defendant. In the supreme court, Beck, J., in delivering the opinion of the court reversing the judgment of the district court, said: "The first instruction, announcing the rule that the death of an absent person cannot be presumed, except upon evidence of facts showing his exposure to danger, which probably resulted in death before the expiration of seven years from the date of the last intelligence from him; and that evidence of long absence without communicating with his friends, or character and habits, making the abandonment of home and family improbable, and of want of all motive or cause for such abandonment which can be supposed to influence men to such acts, is not sufficient to raise a presumption of death. The instruction is not in accordance with the true rule of evidence, and is erroneous." * * " Any facts or circumstances relating to the character, habits, condition, affection, attachments, prosperity, and objects in life, which usually control the conduct of men, and are the motives of their actions, are competent evidence from which may be inferred the death of one absent and unheard from, whatever has been the duration

of such absence.   A rule excluding such evidence would ignore the motives which prompt human actions, and forbid inquiry into them, in order to explain the conduct of men," etc.

The above case was cited with approval in *Hancock v. Amer. Life Insur. Co.*, 62 Mo. R., 26 ; also, by the supreme court of Kansas in *Ryan v. Tudor*, 31 Kan., 366, all cases cited by counsel for appellee.

The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.