## VICTORIA SHERMAN v. MINNESOTA MUTUAL LIFE INSURANCE COMPANY.[1]

Nos. 29,901, 29,902.

May 25, 1934.

[1]Reported in 255 N. W. 113.

608

*Barrows, Stewart, Jackson & Junkin* and *Victor J. Larson,* for plaintiff.

*Doherty, Rumble, Bunn & Butler* and *Robert O. Sullivan,* for defendant.

*LORING, Justice.*

The plaintiff as beneficiary brought suit on a policy of insurance upon the life of Henry Wallis Sherman, her husband, who disappeared about four months after taking out the policy and paying the first annual premium thereon. The defendant denied that the insured was dead and also alleged that the cause of action set forth in the complaint accrued more than six years before its commencement. The plaintiff had a verdict, and the defendant has appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

The policy of insurance upon which this action was based was issued to Sherman October 13, 1922. The first premium was paid. It continued the policy in force until November 13, 1923, which included the grace period of one month for the payment of the next year's premium. February 15, 1923 [see infra, p. 622] Sherman left the family residence early in the morning and has not since been seen nor heard from. It is the contention of the plaintiff that the circumstantial evidence introduced upon the trial justified the jury in finding that Sherman died prior to November 13, 1923. Except for a partly satisfied judgment, the defendant introduced no evidence. The record must be viewed in its aspects most favorable to plaintiff.

It appears that at the time of Sherman's disappearance he was about 47 years of age and that while he was not in affluent circumstances and had suffered some financial reverses in attempting to farm he was then making a comfortable living for his family as a vendor and distributor of newspapers on what is known as the east side of the city of Minneapolis. There were five children in the family, three of whom were boys of sufficient age to assist

their father in the newspaper business which he conducted with four stands and a residence route in that part of the city. Sherman's domestic relations were happy. He was fond of his children and frequently took them to places of entertainment. He had an average income from his business of about $200 a month. He and his wife paid all their store bills in cash, and he paid for his newspapers in cash. He had been conducting this business for about four years prior to his disappearance, and it was his habit to get up between three and four o'clock in the morning and go to the place where the newspaper trucks threw off the bundles of papers which he subsequently displayed for sale. The three boys would get up a little later and follow him to their places of business and attend to the sale of newspapers at the various stands. They worked there until it was time for them to go to school, when the father took over the business until about ten o'clock, when he returned to his home, which was in the vicinity of his work. He returned to work in the afternoon and remained on the job until about eight o'clock. It was his custom to bring home with him the proceeds of the afternoon sales at least. He would then turn this money over to his wife, who put it in a trunk which they had in the house. The trunk seems to have been a sort of open treasury from which funds were taken by either the father or the mother as their requirements dictated. The plaintiff says that every morning when there was a substantial amount in the trunk Sherman took with him the bulk of it for the purpose of depositing it in the bank or paying for his stock of newspapers. The record is not quite clear as to how he paid for the papers except that it was in cash. The plaintiff says that he had an account at the St. Anthony Falls branch of the First National Bank of Minneapolis. She testified that at one time she saw a bank book of that bank in his possession. It may be that he paid for his papers at the bank. The record does not enlighten us on this, nor does it show that he had any money in the bank at the time of his disappearance or that he had recently checked out any. However this may be, the record justifies a finding that it was customary for him to take with him the bulk of the money on hand when he went to business in the

morning, or certainly on Monday mornings. Monday morning, February 15, 1923 [see infra, p. 622] there was in the family trunk $170, $20 of which was in pennies, the remainder in currency. The plaintiff says that it was not Sherman's custom to take the pennies with him in the morning. He did not do so on that morning but took with him the $150 in currency, which evidently included the proceeds of the Saturday and Sunday sales. When the boys arrived at the stands that morning they found that their father was not there and had not opened the bundles of papers. They took charge of the business until it was time for them to go to school and reported their father's nonappearance to their mother. Search was made for him during that and following days, the police being communicated with, but Sherman was never heard from. It seems quite significant that he went in his usual working clothes and left at home a new suit, hat, and other clothing. Had he intended to leave home he would doubtless have taken or worn his good clothes. Had he contemplated suicide he would have been likely to leave the money at home for his family. If he encountered foul play his body must have been concealed successfully. To rebut the evidence introduced by the plaintiff the defendant introduced a certified transcript of a small judgment against Sherman in favor of the Minneapolis Tribune, which was in large part satisfied. The evidence showed that among other papers Sherman was handling the Tribune up until the time of his death.

In this state there is a common law presumption that a person no longer lives who has disappeared and has not been heard from for a period of seven years. This presumption is rebuttable by circumstances or other evidence that indicates an explanation of his disappearance more reasonable than death. The presumption does not arise until the end of the seven-year period and does not fix any time during that period for the death of the absentee. Therefore anyone who seeks to show death prior to the expiration of the seven-year period must do so by evidence that preponderates in favor of that solution of the disappearance. Carlson v. Equitable L. Assur. Society, 188 Minn. 43, 246 N. W. 370; Goodier v. Mut. L. Ins. Co. 158 Minn. 1, 196 N. W. 662, 34 A. L. R. 1383. From

necessity this evidence must be circumstantial in character, and in solving the question presented here we must first determine the rule which governs the sufficiency of circumstantial evidence to support a verdict in civil cases. It is sometimes said that the solution of an issue cannot be established by circumstantial evidence unless the conclusion arrived at is the only one that can fairly or reasonably be drawn from the circumstances and that every other reasonable hypothesis must be excluded. U. S. F. & G. Co. v. Des Moines Nat. Bank (C. C. A.) 145 F. 275, 279; Asbach v. C. B. & Q. Ry. Co. 74 Iowa, 248, 37 N. W. 182. As applied to the fact situations before the courts in such cases, it will usually be found that the rule was applied where there was no preponderance in favor of the hypothesis contended for and that consequently the burden had not been sustained. 1 Jones, Evidence (2 ed.) § 12, note 20. But it is quite obvious that the rule announced in these cases requires a greater degree of persuasiveness from circumstantial evidence than is required from direct evidence. It requires a degree of proof that would entitle the offerer to a directed verdict in his favor as a matter of law upon the issue involved. It is quite true that a jury may not be permitted to guess as between two equally persuasive theories consistent with the circumstantial evidence. Alling v. N. W. Bell Tel. Co. 156 Minn. 60, 63, 194 N. W. 313. Reasonable minds functioning judicially must be able to conclude from the circumstances that the theory adopted by the verdict outweighs and preponderates over any other theory; but, as said in 1 Jones, Evidence (2 ed.) § 12:

"In a civil case, circumstantial evidence need not exclude every reasonable conclusion other than that arrived at by the jury."

And again in note 20 to that section the learned author says:

"In a civil case, to warrant recovery on circumstantial evidence, the evidence must 'outweigh' other hypotheses than the one contended for in the sense that evidence sustaining the hypothesis contended for must preponderate as against the others, but it need not 'exclude' them in the sense of conclusive demonstration of impossibility."

In other words, in a civil case an issue need not be proved beyond a reasonable doubt or demonstrate the impossibility of every other reasonable hypothesis. Asche v. Matthews, 136 Kan. 740, 18 P. (2d) 177, 178; Moffett v. Bozeman Canning Co. 95 Mont. 347, 26 P. (2d) 973, 978; Chalmers v. Hawkins, 78 Cal. App. 733, 739, 248 P. 727; Ley v. Bishopp, 88 Cal. App. 313, 316, 263 P. 369; Eastern Oklahoma L. & P. Co. v. Hare, 142 Okl. 283, 284, 286 P. 769; American Bureau of Shipping v. Allied Oil Co. (C. C. A.) 64 F. (2d) 509, 511; Hilson v. Pacific G. & E. Co. 131 Cal. App. 427, 21 P. (2d) 662, 664. See also Cox v. Ellsworth, 18 Neb. 664, 26 N. W. 460, 462, 53 Am. R. 827. The rule quoted from Jones seems a reasonable one, and we adopt it.

Measured by this rule, does the circumstantial evidence in this case support a verdict that Sherman died prior to November 13, 1923? The courts have often been called upon to pass upon the sufficiency of circumstantial evidence in cases of this character, and it has been frequently held that verdicts have been properly supported which have found that death occurred at or shortly after the time of the disappearance.

Some cases seem to emphasize the presence of a specific peril to the absentee at the time he was last heard from in justifying a finding of death prior to the expiration of the seven-year period, 1 Jones, Evidence (2 ed.) § 293; but the weight of authority seems to be that circumstantial evidence may justify such a finding in the absence of such a showing. As said by Chief Justice Fuller in commenting upon specific peril:

"In Davie v. Briggs, 97 U. S. 628, 634, 24 L. ed. 1086, 1088, Mr. Justice Harlan said: 'If it appears in evidence that the absent person, within the seven years, encountered some specific peril, or within that period came within the range of some impending or immediate danger, which might reasonably be expected to destroy life, the court or jury may infer that life ceased before the expiration of the seven years.'

"But it was not thereby ruled that the inference of death might not arise from disappearance under circumstances inconsistent with a continuation of life, even though exposure to some particular

peril was not shown, and the evidence indicated that Hunter came within the range of immediate danger." Fidelity Mut. L. Assn. v. Mettler, 185 U. S. 308, 319, 22 S. Ct. 662, 666, 46 L. ed. 922.

While in that case the facts may have justified a finding of specific peril, the court quite definitely stated that one is not necessary to a finding of earlier death.

Perhaps the soundest discussion of circumstances which may justify such a finding of death at about the time of disappearance is that contained in the leading case of Tisdale v. Connecticut Mut. L. Ins. Co. 26 Iowa, 170, 176, 96 Am. D. 136. In that case the learned court said:

"Any facts or circumstances relating to the character, habits, condition, affections, attachments, prosperity and objects in life, which usually control the conduct of men, and are the motives of their actions, are competent evidence from which may be inferred the death of one absent and unheard from, whatever has been the duration of such absence. A rule excluding such evidence would ignore the motives which prompt human actions, and forbid inquiry into them in order to explain the conduct of men. The true doctrine may be readily illustrated thus:

"An honored and upright citizen, who, through a long life, has enjoyed the fullest confidence of all who knew him,—prosperous in business and successful in the accumulation of wealth; rich in the affection of wife and children, and attached to their society; contented in the enjoyment of his possessions, fond of the associations of his friends, and having that love of country which all good men possess,—with no habits or affections contrary to these traits of character—journeys from his home to a distant city and is never afterward heard of. Must seven years pass, or must it be shown that he was last seen or heard of in peril, before his death can be presumed? No greater wrong could be done to the character of the man than to account for his absence, even after the lapse of a few short months, upon the ground of a wanton abandonment of his family and friends. He could have lived a good and useful life to but little purpose, if those who knew him could even entertain

such a suspicion. The reasons that the evidence above mentioned raises a presumption of death are obvious; absence from any other cause, being without motive and inconsistent with the very nature of the person, is improbable. It is suggested in argument that such absence may be on account of insanity. That may be possible, but as death under such circumstances is more probable than insanity in the absence of evidence thereof, the law raises the presumption of death. Evidence which would point toward insanity as the cause of such absence, would of course be proper for the consideration of the jury, from which its probability might be determined. The competency of evidence of the character above indicated, from which the fact of the death of an absent person may be found within the period of seven years, is well sustained by authority. 2 Greenl. Evid. § 279; Angell on Fire and Life Ins. § 351; Doe v. Flanagan, 1 Kelly, 543; White v. Mann, 26 Maine, 361; Smith v. Knowlton, 11 N. H. 197."

In Spahr v. Mut. L. Ins. Co. 98 Minn. 471, 473, 108 N. W. 4, 5, this court said:

"Where one, steady in his habits, successful in his profession or business, contented and respected, having a fixed residence and pleasant domestic relations, suddenly disappears, and no tidings of him are received, such circumstances, if satisfactory to the jury, may warrant them in finding his death at or about the time of his disappearance. Tisdale v. Connecticut, 26 Iowa, 170, 96 Am. Dec. 136; Hancock v. American, 62 Mo. 26; Northwestern Life Ins. Co. v. Stevens, 71 Fed. 258, 18 C. C. A. 107. The rule is based upon the reasonable probability that a man of such character and so circumstanced would, if alive, communicate with his family."

In Butler v. Supreme Court, 53 Wash. 118, 122, 101 P. 481, 483, 26 L.R.A.(N.S.) 293, 300, that court concluded:

"Where the party is known to be sober and industrious, with strong domestic attachments, considerate, kind, and affectionate to his family, and generally regardful of the rights of others, and disappears suddenly from or leaves his home and the community in which he lives and where his interests are, without any explana-

tion; these are circumstances so strong that, without more, the jury would be justified in concluding that death was the cause of his disappearance."

An exhaustive note commences on page 294 of 26 L.R.A. (N.S.) which collects and comments on cases where the question of time of death is involved. Cases have arisen where suits have been maintained long prior to the lapse of the seven-year period and recovery has been sustained without the aid of the presumption. Springmeyer v. Woodmen of the World, 163 Mo. App. 338, 346, 143 S. W. 872, 874, was such a case brought within two years after the disappearance of the insured. The court there said:

"As we said in our statement of facts, there was no direct and positive proof of Springmeyer's death, and there is no room for the presumption of death which arises from the unexplained absence of a person, unheard of, for seven years, for here the suit was brought within the seven years. The presumption is, that Springmeyer is alive, and the burden of proof is on the plaintiff to establish the contrary. In the absence of direct or positive proof, the fact of his death might be established in either of two modes. * * * 2. By showing that the missing person's character, habits, condition, affections, attachments, etc., were such as to render his absence from home and family for any cause, other than his death, improbable."

N. W. Mut. L. Ins. Co. v. Stevens (C. C. A.) 71 F. 258, 262, was a case brought within less than a year from the disappearance of the insured. The judgment for the plaintiff was reversed for errors in the charge, but the court, speaking through Judge Sanborn, said [71 F. 262]:

"If, under such instructions, they were convinced by a fair preponderance of the evidence, in view of the established presumption of life for seven years in ordinary cases of disappearance, that the insured died before the commencement of these suits, we are unwilling to hold that they might not lawfully find that fact, although there was no proof that the insured was last seen in the presence

of an imminent peril, that might probably cause his death. The exceptions to these instructions cannot be sustained."

McKay v. Kansas Soldiers' Compensation Board, 126 Kan. 120, 266 P. 935, 936, was brought within seven years and recovery sustained without the aid of the presumption. The court quoted with approval from a previous case and Wharton, Evidence, as follows [126 Kan. 121]:

"It is doubtless true that a jury is justified in inferring death within less than seven years, where besides unexplained absence there are other matters tending to show death. In 2 Wharton's Evidence, § 1277, the author says:

" 'It has been incidentally observed that, independent of the general presumption of death arising from unexplained absence abroad for seven years, certain facts have been noticed by the courts as affording grounds on which inferences of death, more or less strong, may rest. * * * Thus, death may be inferred by a jury from the mere fact that a party who is domestic, attentive to his duties, and with a home to which he is attached, suddenly, finally, and without explanation, disappears.' "

The defendant herein relies largely upon Goodier v. Mutual L. Ins. Co. 158 Minn. 1, 196 N. W. 662, 34 A. L. R. 1383; Carlson v. Equitable L. Assur. Society, 188 Minn. 43, 246 N. W. 370; and Spahr v. Mutual L. Ins. Co. 98 Minn. 471, 108 N. W. 4. In the Goodier case the absentee was a fugitive from justice, and if he had not disappeared he was, as this court said, fairly sure of spending a goodly portion of the remainder of his life behind bars as a felon. Under such circumstances, even the seven-year presumption might well be considered as rebutted. N. W. Mut. L. Ins. Co. v. Stevens (C. C. A.) 71 F. 258. Certainly no proper inference of death soon after disappearance could be justified. In the Carlson case the insured's absence was much more reasonably accounted for by his marital and financial difficulties and his desire to seek employment elsewhere. Reasonable minds could not judicially find that the evidence preponderated in favor of the inference of death. In the Spahr case the absentee was conclusively shown to be a drunkard and a liber-

tine and to have been seen in a distant city after his alleged disappearance. None of these cases is at all parallel with the fact situation in the case at bar, where the insured's married life was a happy one, where he worked with and was very fond of his children, and where, compared with his previous enterprises, he was fairly prosperous. We regard the small judgment against him in favor of the Minneapolis Tribune as too trivial a matter to influence his disappearance. There was a balance of only some $30 or $40 unpaid on it. The jury was entitled to believe that the taking of the $150 on the morning of his disappearance was a part of his business routine, and with this element so disposed of we find little if anything to detract from the inference by the jury that the only reasonable explanation of his disappearance was that in some way and by some means he ceased to live. It is true that when a person is found dead there is a presumption against suicide and a presumption against the inference of crime; but whether or not such presumptions prevail where a person has disappeared, the inferences which may be permissibly drawn from the circumstances of Sherman's environment are sufficiently strong to overcome any presumption that he continued to live but absented himself without subsequently communicating with family or friends. As said by Judge Sanborn in N. W. Mut. L. Ins. Co. v. Stevens (C. C. A.) 71 F. 258, 260:

"These presumptions, however, are but rational inferences from the given state of facts, which so many courts have agreed that reasonable men, in the exercise of sound judgment, would naturally draw, that they have become rules of action and of decision. They are, after all, only presumptions of fact; and, when the state of facts from which they are drawn is modified, the presumptions or inferences drawn from it must and ought to change. * * * The facts and circumstances surrounding each disappearance which tend to affect the inference of continued life or early death that the minds of reasonable men, anxious only to arrive at the truth, would draw, should be received in evidence in the trial of these cases; and then, guided by the established presumption that one who dis-

appears under ordinary circumstances is presumed to live for seven years thereafter, the fact of continued life or previous death at the important date should be determined by the jury if there is sufficient evidence in the case to warrant a finding that the established presumption has been varied, and by the court if there is no such evidence."

We are of the opinion that reasonable minds functioning judicially might well find that the evidence and the legitimate inferences therefrom preponderated in favor of the conclusion that death occurred at about the time Sherman disappeared and prior to November 13, 1923. No case has been called to our attention that would be authority for upsetting that conclusion.

In the briefs much is said of Behlmer v. Grand Lodge, 109 Minn. 305, 123 N. W. 1071, 26 L.R.A.(N.S.) 305; Ecklund v. Supreme Council, 152 Minn. 20, 187 N. W. 826. In arriving at our conclusion herein we are not influenced by these decisions in so far as they relate to the sufficiency of evidence to sustain the verdict. The rules in regard to the sufficiency of circumstantial evidence to sustain a verdict in this class of cases should be taken as we here define them.

■ It is the contention of the defendant that the statute of limitations had run against the plaintiff's cause of action. Aside from the denial of the death and an allegation that Sherman was still alive, the sole defense pleaded was that the cause of action had accrued more than six years prior to its commencement. The contract of insurance reads that the company "hereby insures the life of Henry Wallis Sherman (hereinafter called the insured) and agrees to pay at the home office of the company in the city of St. Paul, immediately upon receipt of due proof of the death of the said insured two thousand dollars (the face amount of this policy) to his wife, Victoria Sherman, beneficiary, * * *." November 12, 1932, the plaintiff swore to an affidavit entitled "Proof of Death," wherein she set forth the fact that Sherman had disappeared on the 15th day of February, 1923, the lack of tidings and her diligent inquiry, and concluded with the statement that Sherman died on or about the 23d day of February, 1923. This affidavit was lodged

with the defendant on November 13, 1932, as proof of death, and this suit followed. It appears from the record that some correspondence preceded the filing of this proof, but the bulk of the correspondence was excluded as self-serving on the part of the plaintiff upon the objection of the defendant. A part of a letter dated November 5, 1923, from plaintiff to the defendant, was received in evidence. Therein she stated that Sherman disappeared February 15, 1923, and that she had not heard from him since and did not know whether he was dead or alive. She also stated that she did not know what to think or what to do. The replies from the defendant to plaintiff do not appear.

The question at once arises as to when plaintiff's cause of action accrued. The general rule is that the limitation upon a cause of action upon an insurance policy runs from the time when the loss becomes due and payable and the right to sue accrues, and not from the time when the loss occurs. 7 Cooley, Briefs on Ins. (2 ed.) p. 6820. The limitation begins to run at the time when proofs are furnished. 7 Cooley, Briefs on Ins. (2 ed.) p. 6821. In Chandler v. St. Paul F. & M. Ins. Co. 21 Minn. 85, 18 Am. R. 385, this court held in regard to a fire insurance policy that no claim accrues or arises in favor of the assured upon the mere happening of the loss but that the giving of notice and the furnishing of satisfactory proofs were conditions precedent to be performed by the assured before he was entitled to claim the stipulated indemnity. In that case [21 Minn. 86] the defendant agreed to make good to the assured all loss "to be paid within 60 days after due notice and satisfactory proofs of the same." In Abramovitz v. National Council, 134 Minn. 302, 305, 159 N. W. 624, 625, this court, speaking through Mr. Justice Holt, said with reference to a certificate of insurance issued by a fraternal beneficiary society which provided for proofs of death prior to the maintenance of an action:

"Construed in connection with the limitation clause therein, this court, in Stewart v. Knights and Ladies of Security, 125 Minn. 512, 147 N. W. 651, held that the quoted provision extended the cause of action until proofs of loss were furnished and passed upon. This seems equivalent to saying that the cause of action did not

accrue until proofs were furnished. The cases cited by the trial court for violations of contract for carriage and for torts do not control here, because in those cases the breach of the contract or the commission of the tort at once gave rise to a common law action, and if there were any contract provision or any statute which stayed the cause of action the defendant had to plead and prove it. But here we cannot hold that there is any breach of this insurance contract until plaintiffs have tendered proofs of death of the member and their identity as beneficiaries."

In Bonslett v. New York L. Ins. Co. (Mo. Sup.) 190 S. W. 870, a disappearance case, where the policy of insurance provided that the instalment was to be paid immediately upon receipt and approval of the proofs of death of the insured, the court held that the cause of action accrued and the statute of limitations began to run when proofs of death were submitted and approved; that prior to that time there was no breach of contract. See also Griffin v. N. W. Mut. L. Ins. Co. 250 Mich. 185, 229 N. W. 509, and cases cited. These contract cases differ materially from such cases as Litchfield v. McDonald, 35 Minn. 167, 28 N. W. 191, where leave to sue must be obtained but is considered no part of the cause of action.

In Behlmer v. Grand Lodge, 109 Minn. 305, 123 N. W. 1071, 26 L.R.A.(N.S.) 305, it was held that no cause of action accrued upon the benefit certificate there involved until proofs of death were presented. The serious question presented in that case was whether proofs of death had been offered within a reasonable time after Behlmer's death. We are not confronted with any such question in this case because it was not pleaded nor does the record show that this defense was presented to the trial court or that the case was tried upon any such theory. From the correspondence which was offered, it is quite apparent that it would not have availed defendant to raise the point upon the trial and that counsel wisely refrained from doing so. The defendant cannot now raise the question. Peoples State Bank v. Dickie, 191 Minn. 558, 254 N. W. 782. We hold that the cause of action did not accrue until proofs of death were lodged with the company and that the defense pleaded by the company has not been well made out.

■ The plaintiff by cross-appeal has raised the question as to the time from which interest begins to run. Obviously it would not commence to run until the cause of action accrued. The trial court properly awarded interest from November 13, 1932.

Affirmed.

*STONE, Justice* (dissenting).

The presumption of death arising from an unexplained disappearance for seven years does not aid in proving death at any time before the end of the seven-year period. Neither suicide nor crime can be presumed. Hence it seems to me that the conclusion that Sherman departed this life at some time between October 13, 1922, and November 13, 1923, must rest exclusively in conjecture and for that reason there should be a reversal.

*DEVANEY, Chief Justice,* took no part.

ON APPLICATION FOR REARGUMENT.

On June 22, 1934, the following opinion was filed:

*PER CURIAM.*

Our attention has been called to the fact that February 15, 1923, was not on a Monday. The plaintiff testified repeatedly that her husband disappeared on a Monday morning. Their son Perle said it was Monday. He did not give the date. The jury were justified in believing that the disappearance took place on a Monday and that the error was in the day of the month. Pages 609 and 611 of the original opinion are corrected by striking out "15" after "February" and inserting the word "in" before that word.

After a verdict for plaintiff the facts must be viewed in their aspect most favorable to her. That proposition is so elementary that no authorities need be cited.

The case of Claywell v. Inter-Southern L. Ins. Co. (C. C. A.) 70 F. (2d) 569, cited in the petition for reargument, is clearly distinguishable from the case at bar on the facts. In that case were various facts which tended to explain the disappearance on other grounds than death.

The appellant also challenges the statement in the original opinion that the question of presentation of proofs within a reasonable

time was not presented as an issue in the trial court. Careful scrutiny of the record shows that it was not pleaded; that it was not mentioned in the motion to direct a verdict; that no request to charge was made which raised the question; and that no exception or assignment of error raised the question on motion for a new trial. Of course it was too late to make the point on motion for new trial. In our opinion a defense of this character should be pleaded. If it was true, as stated in plaintiff's offer of exhibit F, that defendant stated to plaintiff by letter that it could not settle the insurance claim until seven years had elapsed after her husband's disappearance, the plaintiff would have been entitled to show the fact, if it be one, that she had been so induced to delay in the presentation of her proofs of death. In order fairly to raise the issue it should have been pleaded. There is not a syllable in this record which shows that the question was ever raised below.

Petition denied.

