# FRED HAFFTEN v. ELLA KIRSCH.[1]

February 4, 1949.

No. 34,776.

*Howard P. Quealy,* for appellant.
*Maugridge S. Robb,* for respondent.

LORING, CHIEF JUSTICE.

This was a suit to cancel certain conveyances to lot 11, Auditors Subdivision 187, Hennepin county. Plaintiff prevailed, and defendant comes here on an appeal from an order denying a new trial, which was sought, among other grounds, on the assertion in the motion that the findings, conclusions, and order for judgment "are not

---

[1]Reported in 36 N. W. (2d) 35.

justified by the evidence and are contrary to law." Since it is obvious that the findings of fact support the conclusions of law, the question presented for decision is whether the findings of fact are sustained by the evidence.

From 1905 to 1941, plaintiff and his older brother, Louis, were the owners in common of the lot in controversy. They conducted a hardware business in the two-story building which they had erected thereon. During the World War I, plaintiff sold out his share of the hardware business to Herman Kreidler, brother-in-law of Louis. There was no change in the ownership of the real estate. Plaintiff and Louis continued to own the lot and building in common. In 1927, plaintiff moved to California, where he was living at the time of the trial of this case. Quite frequently he returned to Minneapolis, stopping with his sister or with Louis. On such occasions, he usually performed repair work around the building on the lot in controversy. The building contained space for two stores on the ground floor and two apartments upstairs. Louis and Kreidler finally abandoned the hardware business, and that part of the building was occupied for other purposes.

In May 1941, plaintiff and his wife drove to Minneapolis and spent the summer in Minnesota. Louis' wife became suddenly ill and died about September 1. Louis was 10 or 12 years older than plaintiff, who was at that time about 70 years of age. Louis was then in good health, though somewhat later his eyesight failed. He had a homestead on Lyndale avenue, and his living arrangements at once became a problem. His niece, this defendant, was a widow with a married son, who was badly crippled. She operated a small grocery store at Delano, Minnesota, and it was arranged that she should give up her unprofitable business there and move into Louis' home to keep house for him, with the agreement that he should leave her the house when he died. What occurred in connection with Louis' property arrangements gives rise to this litigation.

There is evidence in the record tending to prove that Louis was very friendly to plaintiff, and, because the brothers had labored

together to build up the property now in controversy, he desired to leave his share of it to plaintiff. Therefore, Louis made plans to leave this property to him and his homestead to defendant and to dispose of other property to a sister and the surviving husband of a deceased sister. He sought legal advice as to how to accomplish his purpose. As a result, a will was drawn to carry out his wishes as above stated, except that the property here in question was conveyed through a conduit of title and placed in joint ownership with plaintiff in order to avoid delay in probate proceedings and to give the survivor immediate enjoyment of the entire property. The purpose and effect of the joint tenancy were fully explained to Louis, to plaintiff, and to defendant, who were all present at the conference with the lawyer who prepared the papers. This occurred October 4, 1941. The deeds were delivered to the register of deeds for record, and the will, in duplicate, was taken by Louis and placed in the drawer of his sideboard. Shortly after the execution of the papers plaintiff and his wife left for California. Defendant, who was already at Louis' home, continued on there, and her son and his wife moved into Louis' home about a year later. Apparently defendant took over the management of Louis' affairs. His bank account was made a joint account with her.

December 12, 1941, Louis made a new will which left everything to defendant or her son, except one piece of property to Fred Hafften and another to Herman Kreidler; however, a mortgage of $2,000 was placed on the latter property after Ella came to live with Louis, the proceeds of which went into the joint account. No provision was made for the income from Louis' half of lot 11 to go to plaintiff, nor was that property mentioned. It was covered by the residuary clause to defendant.

Two days after this will was executed, defendant wrote a letter for Louis to plaintiff saying that he had not understood the effect of the joint tenancy arrangement; that he wanted lot 11 put back in tenancy in common, and "Then I will will you the income for

life."[2] To this proposal plaintiff consented immediately.[3] The deeds were sent to him and duly executed and returned to Louis in time

[2]"12-14-41

"Dear Bro. Fred:

"* * * (Immaterial portions omitted)

"When the deeds were returned to me the other day I discovered that our deal in regard to it was not the way I had intended it. I understood that I was giving you the income from my half during your life from the time of my death. I find now that we have it under a joint tenancy deed, and that on the death of either of us the title to the entire property goes to the other absolutely. My intention was that you were to have the income for life, but that I had the right to give or will my share in the title to anyone I chose after your death. Now Fred, the only way this can be changed to carry out my intentions is for us to deed it to a third party and then get a deed back as tenants in common. Then I will will you the income for life. Even in the event of your death before mine, I wouldn't want your half of the property, as we should both have the privilege to do as we please, after we are both through with it. I never understood it to be the way it is, I thought it was a will to you. I would like to have it changed and that should make it satisfactory for both of us, the way I intended it to be. Hope this will meet with your approval.

"* * * (Additional immaterial portions omitted)

"(signed)   Bro. Louis

"(Postscript) Louis asked me to write this letter for him the way he wanted it, he doesnt care to do any writing he is so shaky.

"* * * (Rent account omitted)"

[3]"Dec. 21, 1941

"Bro. Louis & All:

"* * * (Immaterial portions omitted)

"Now in regards to the deal we made. I wasnt very much surprised the way you feel about it. Somebody must of been wispering in your ears. I thought you understood it perfectly and so did I. I surly did not want to take any undue advantage from you. If you remember we took that attorney advice. He thought it was the best way out. We should of left the deed just the original way. I have thought of it many times and was going to write to you about it but as long as I am planning on coming home in the spring I would wait untill than [sic]. Now Louis I know it was a mistake the way it is its bad for both of us and I am more than willing to have that matter corrected. I am almost sure that I will be back again in the spring. So if you care to wait untill than alwright [sic] if not you can go ahead wright [sic] away. Its O.K. with me. I dont think

to be filed before the taxes for that year were required to be paid. The promise to bequeath the income for life to plaintiff was never performed. In March 1944, defendant went with Louis to Buffalo, Minnesota, where deeds were executed and delivered which placed Louis' share of lot 11 in the joint tenancy of defendant and Louis, thus accomplishing complete acquisition of Louis' property by defendant and her son. The trial court found that Louis and defendant had no intention that Louis should perform the testamentary part of the bargain; that throughout Louis' lifetime he and defendant concealed from plaintiff the intent not to so perform the agreement; and that by deeds, through a conduit of title on March 25, 1944, Louis was divested of title to his share of lot 11 and the title vested in Louis and defendant as joint tenants. In effect, the court found that plaintiff was induced to execute the deeds restoring the property to a tenancy in common by a fraudulent promise that Louis would make a will giving the income of his share to plaintiff for life, a promise which Louis, when he made it, did not intend to keep and which defendant did not at that time intend to permit him to keep.

■ In our opinion, the correspondence between the brothers, coupled with immediate performance by plaintiff, constituted a contract to make a will giving plaintiff a life interest in Louis' share of lot 11, for which plaintiff exchanged a joint tenancy with his elder brother for a tenancy in common.

■ The fact that two days after the will of December 12, 1941, had been executed defendant wrote the proposal to plaintiff, in behalf of Louis, that their joint tenancy in lot 11 be changed to a tenancy in common, asserting that he had not understood the effect of the joint tenancy, when in fact it had been fully explained to him, together with all the surrounding circumstances, tends to prove that those two practically contemporary transactions were designed to defraud plaintiff and that that intent not only existed at the

eather [sic] you or me will croke so soon yet. * * * (Other immaterial portions omitted)

"Bro. Fred."

time of the proposal, but that it existed prior thereto. So far as defendant was concerned, there was evidence tending to prove that she intended to get everything Louis had when the proposal to be his housekeeper was first suggested to her, and even before she went to live with him.[4] Also, the evidence tends to prove that she adroitly kept the brothers apart as much as possible after the change in title was consummated, even endeavoring to discourage plaintiff from coming to visit his brother. Louis evidently coöperated with her, so plaintiff never discovered that Louis had not performed his part of the bargain. In a civil case, circumstantial evidence need not exclude every reasonable conclusion other than that arrived at by the trier of fact. The conclusion arrived at need only outweigh and preponderate over any other theory. Sherman v. Minnesota Mut. L. Ins. Co. 191 Minn. 607, 612, 255 N. W. 113, 115. Under this rule, we think that the trial court was amply justified in rescinding the entire transaction. The deeds of March 25, 1944, were obviously executed in furtherance of the fraudulent scheme. The trial court was right in directing their cancellation. This does not place plaintiff in any better situation than he would have been had the fraud not been perpetrated.

Order affirmed.

---

[4]This evidence was hearsay, but it was evidence of verbal acts, the admission of which is not challenged here.