# VIOLET HAGSTEN v. WALTER SIMBERG AND ANOTHER.[1]

November 10, 1950.

No. 35,253.

[1]Reported in 44 N. W. (2d) 611.

*Holmes, Mayall, Reavill & Neimeyer*, for appellants.
*Naughtin & Henley*, for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order of the trial court denying defendants' alternative motion for judgment notwithstanding the verdict or for a new trial in an action brought by plaintiff as special administratrix of the estate of her minor son, who is alleged to have met his death by being run over by an automobile driven by defendant Walter Simberg, which automobile was owned by defendant Clifford Rue and was driven with his consent at the time of the accident.

Plaintiff's intestate met his death on Second avenue east, a short distance south of Twenty-fourth street, in the village of Hibbing. Second avenue east is a concrete-paved street 30 feet in width from curb to curb, and runs in a north-south direction. Twenty-fourth street runs east and west. Walter Simberg was employed by Clifford Rue, who had a Studebaker agency located at the corner of Twenty-fourth street and First avenue. On October 22, 1947, Simberg left his place of employment to go to his home for lunch. His home was located at 2917 Second avenue east. He was driving a new long-wheel-base Studebaker truck which had on it an enclosed cab but no body. The rear tires were dual. The rear end of the truck consisted only of the chassis. In going to his home, he drove east on Twenty-fourth street to Second avenue, where he turned south and proceeded in that direction until he reached his home. As he passed the intersection of Twenty-fifth street and Second avenue east, a Mr. Edward John Webb was approaching Second avenue from the west in his car. Simberg testified that he saw no one at this intersection. Webb's testimony was as follows:

"Q. And as you came to Second Avenue East, did you notice anything?

"A. Well, as I approached the intersection this red truck, Studebaker truck, with a chassis, just a cab on it, it went by me

going south. Of course he was traveling a pretty good speed, and I applied the brakes very hard, you know, because, to stop kind of sudden there.

"Q. Why did you do that?

"A. Well, we seemed to both approach the intersection pretty near the same time, see.

"Q. Well, you were on his right-hand side?

"A. Well, I know, but to avoid, I just approached the intersection, and I stepped on it a little bit hard and let him go by.

"The Court: Neither street is an arterial?

"Witness: No, sir."

After Simberg had passed, Webb entered Second avenue east and proceeded south, following behind the Simberg truck at a distance of some 150 or 200 feet. When he was about halfway into the 2500 block, he noticed an object in the center of the street, stopped his car, ran over to it, and found the body of plaintiff's intestate, a boy about five years of age, who was then still alive, but who died shortly thereafter. One of the boy's shoes was later found on the east side of the street and the other on the opposite side. No vehicle except Simberg's truck and the Webb automobile had traveled the street at the point where the boy's body was found between the time that Simberg's truck had passed the intersection where the Webb car stood and the time when the boy's body was discovered. Simberg testified that he saw no child or children in the street. He was positive that there was no child in front of him. He denied having any knowledge of having hit or run over anyone.

Another witness, Ella Smaalden, was standing on the west side of the street near the scene of the accident talking to a relative seated in an automobile which was parked on that side of the street. She testified that she saw the truck pass on the street and that shortly thereafter she heard "a big bump" and went over and found the boy lying in the street. The boy's body was

found with his feet about on the center line and his body to the side toward the west.

Simberg continued south to his home. He parked his truck, went in, and started his lunch. Police officers had been called, and Simberg's truck, which was then parked in front of his house, was pointed out to them. They went to his home and accused him of killing the boy. He denied having run over anyone and has always maintained that he had no knowledge of having hit or run over the boy. An examination of the truck was made by the police officers, but they failed to find anything on the truck which would indicate that it had struck the boy.

There were no eyewitnesses to the accident. Neither Webb, who followed the truck, nor Mrs. Smaalden, who stood near the side of the street, saw what happened. Simberg testified that he thought he had noticed some children on the east side of the street, but Webb saw none.

An autopsy was performed on the body of the boy. It is needless to state the results of the autopsy, except to say that the body was badly bruised. The immediate cause of death was found to be a dislocation of the first cervical vertebra.

It is the contention of defendants that there is no evidence that would justify a finding of negligence which constitutes the proximate cause of the death of plaintiff's intestate. Several other errors are assigned, but if defendants' position is correct with respect to the insufficiency of the evidence the other errors become of no importance.

While it is natural that our sympathies are with the next of kin of a child who has unfortunately come to such an untimely end, we must not permit our sympathies to blind our judgment to such an extent that we allow it to take the place of the evidence required to prove a cause of action. Negligence and its causal relation to the injuries upon which the right to recover rests must be proved by that degree of proof which is established by law. While it is true that civil damages may be recovered where the proof is circumstantial if the evidence meets the legal

quantum of proof, mere proof of the happening of the accident or proof that death or injury was the result of the act of another, without proof of negligence or its causal relation to the result complained of, is not sufficient. If we were to adopt the theory that mere proof of the happening of the event is sufficient, we would in effect be applying the doctrine of *res ipsa loquitur* to a class of cases where it obviously has no application.

In Sherman v. Minnesota Mut. L. Ins. Co. 191 Minn. 607, 612, 255 N. W. 113, 115, we discussed the degree of proof required to establish a fact in a civil action by circumstantial evidence. We there said:

"* * * we must first determine the rule which governs the sufficiency of circumstantial evidence to support a verdict in civil cases. It is sometimes said that the solution of an issue cannot be established by circumstantial evidence unless the conclusion arrived at is the only one that can fairly or reasonably be drawn from the circumstances and that every other reasonable hypothesis must be excluded. U. S. F. & G. Co. v. Des Moines Nat. Bank (C. C. A.) 145 F. 273, 279; Asbach v. C. B. & Q. Ry. Co. 74 Iowa, 248, 37 N. W. 182. As applied to the fact situations before the courts in such cases, it will usually be found that the rule was applied where there was no preponderance in favor of the hypothesis contended for and that consequently the burden had not been sustained. 1 Jones, Evidence (2 ed.) § 12, note 20. But it is quite obvious that the rule announced in these cases requires a greater degree of persuasiveness from circumstantial evidence than is required from direct evidence. It requires a degree of proof that would entitle the offerer to a directed verdict in his favor as a matter of law upon the issue involved. It is quite true that a jury may not be permitted to guess as between two equally persuasive theories consistent with the circumstantial evidence. Alling v. N. W. Bell Tel. Co. 156 Minn. 60, 63, 194 N. W. 313. Reasonable minds functioning judicially must be able to conclude from the circumstances that the theory adopted by the ver-

dict outweighs and preponderates over any other theory; but, as said in 1 Jones, Evidence (2 ed.) § 12:

" 'In a civil case, circumstantial evidence need not exclude every reasonable conclusion other than that arrived at by the jury.'

"And again in note 20 to that section the learned author says:

" 'In a civil case, to warrant recovery on circumstantial evidence, the evidence must "outweigh" other hypotheses than the one contended for in the sense that evidence sustaining the hypothesis contended for must preponderate as against the others, but it need not "exclude" them in the sense of conclusive demonstration of impossibility.'

"In other words, in a civil case an issue need not be proved beyond a reasonable doubt or demonstrate the impossibility of every other reasonable hypothesis. Asche v. Matthews, 136 Kan. 740, 18 P. (2d) 177, 178; Moffett v. Bozeman Canning Co. 95 Mont. 347, 26 P. (2d) 973, 978; Chalmers v. Hawkins, 78 Cal. App. 733, 739, 248 P. 727; Ley v. Bishopp, 88 Cal. App. 313, 316, 263 P. 369; Eastern Oklahoma L. & P. Co. v. Hare, 142 Okl. 283, 284, 286 P. 769; American Bureau of Shipping v. Allied Oil Co. (C. C. A.) 64 F. (2d) 509, 511; Hilson v. Pacific G. & E. Co. 131 Cal. App. 427, 21 P. (2d) 662, 664. See also Cox v. Ellsworth, 18 Neb. 664, 26 N. W. 460, 462, 53 Am. R. 827. The rule quoted from Jones seems a reasonable one, and we adopt it."

The burden rests on plaintiff to establish the negligence of defendants and its causal relation to the death of plaintiff's intestate, whether such proof is circumstantial or direct. In Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 441, 215 N. W. 678, 679, we said:

"* * * The negative prevails automatically without evidence either way, and should prevail in the absence of a preponderance of proof for the affirmative. It follows that the negative may well prevail through conjecture or mere possibility if there is nothing stronger for the affirmative. But it is never enough for the affirmative that the evidence suggests possibility or furnishes the basis

for a mere conjecture, as distinguished from a reasonable inference, in its favor. The proof must not only agree with but must also furnish reasonable support for the 'hypothesis which it is adduced to prove.' Lillstrom v. N. P. R. Co. 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587."

In the case of Kludzinski v. G. N. Ry. Co. 130 Minn. 222, 224, 153 N. W. 529, we said:

"The burden of proof is upon the plaintiff to prove that some negligent act of defendant caused the death of deceased. It is not incumbent on the defendant to show how the accident happened. If the cause of its happening is not established, the defendant is entitled to prevail. The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility of injury from defendant's acts. It must be more than merely consistent with plaintiff's theory of how the accident occurred. Yet the causal connection between the negligent act of defendant and the injury to plaintiff need not be proved by direct evidence. The evidence may be circumstantial, and circumstantial evidence is sufficient if it furnishes a reasonable basis for the jury to infer that some negligent act of the defendant was the cause of the injury. Lewis v. Chicago G. W. R. Co. 124 Minn. 487, 145 N. W. 393; and cases cited."

See, also, McNamee v. Hines, 150 Minn. 97, 184 N. W. 675.

Applying these rules to the facts now before us, what evidence is there of any negligence? Plaintiff would have us infer from the fact that Simberg's wife was seriously ill in the hospital that his mind was so preoccupied while driving home that he did not keep a proper lookout. Such reasoning is based entirely on conjecture and speculation. Simberg's wife had been sick for some time. He was not confronted with an unexpected illness and was not hurrying home to see his wife, but was simply driving home to have lunch with his children, his wife being in the hospital at that time. There is no reason why he should have been in a hurry or why he should have been in a state of mind where he

could not keep a proper lookout on that occasion any more than on any other. Simberg's testimony is that he was traveling about 20 miles per hour. There is no evidence to contradict that testimony, unless it might be the testimony of Mr. Webb quoted above. Even he was not asked to explain what he meant by "a pretty good speed." We may assume that 20 miles per hour, if Simberg was traveling at that rate of speed when he passed Mr. Webb, is "a pretty good speed" when two cars are about to enter an intersection at the same time, but it is not an unlawful or negligent speed when traveling in the middle of the block when there is nothing to interfere with the forward motion of the vehicle. There is absolutely no evidence of any failure to keep a proper lookout, unless it may be inferred from the fact that somehow the child did get run over. There is a complete absence of evidence as to how the child came into contact with the truck. The doctor who conducted the autopsy was permitted to state that in his opinion the child was run over. We may assume that to be true, but even that fact leaves us in the dark as to how the accident happened. Furthermore, the opinion of the doctor is itself based entirely on conjecture and speculation. As we said in Honer v. Nicholson, 198 Minn. 55, 59, 268 N. W. 852, 854:

"* * * On its face it is but conjecture, and affirmative decisions cannot stand on such unsupported speculation even though it is a professional emanation."

The facts in this case are not too dissimiliar from those in O'Neil v. Cochrane, 184 Minn. 354, 238 N. W. 632, except that in that case the driver of the truck did discover that he had run over a child after the accident had happened because of the fact that he heard the child cry. In the instant case, the driver of the truck never did discover that he had run over anyone. In the O'Neil case, we upheld the trial court in dismissing the action for lack of evidence to establish the essential facts.

About all that can be said in this case is that the jury would be warranted in finding that the death of plaintiff's intestate re-

sulted from being hit or run over by defendants' truck. How the accident happened or whether it was caused by any negligence of defendants is left completely in the realm of conjecture and speculation. A verdict based on such complete lack of evidence to establish essential facts cannot be permitted to stand. To do so is to substitute speculation for proof and effectively shift from plaintiff to defendants the burden of proof of the essential fact of negligence and its causal relation to the result. That we cannot do.

Reversed with instructions to enter judgment for defendants.